UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY C. GALLAGHER and
ROBERT WYATT,
individually and on behalf of all
others similarly situated,

        Case No. 19-

    Plaintiffs,        Hon.

v.

GENERAL MOTORS COMPANY,

    Defendant.

_____/

DANIELW. RUCKER (P67832)
PATRICIA A. STAMLER (P35905)
STEVE J. WEISS (P32174)
Hertz Schram PC
Attorneys for Plaintiffs
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, Michigan 48302
(248) 335-5000
drucker@hertzschram.com
pstamler@hertzschram.com
sweiss@hertzschram.com

_____/

**COLLECTIVE ACTION COMPLAINT AND
<u>DEMAND FOR JURY TRIAL</u>**

NOW COME Plaintiffs KELLY C. GALLAGHER and ROBERT WYATT

(collectively "Plaintiffs"), by and through their attorneys, Hertz Schram PC, on

behalf of themselves and on behalf of all others similarly situated, bring this

Complaint against Defendant as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff GALLAGHER was for all times relevant to this Complaint a Component Validation Engineer for Defendant GENERAL MOTORS COMPANY ("GM") and Aerotek CE, a division of Aerotek, Inc. ("Aerotek"), a position for which he was paid hourly and that is not exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA").

2.      Plaintiff WYATT was for all times relevant to this Complaint a Business Analyst for Defendant GM and TEKsystems, Inc. ("TEKsystems"), a position for which he was paid hourly and that is not exempt from the overtime provisions of the FLSA.

3.      Plaintiffs allege on behalf of themselves and all similarly-situated non-union contract employees hired from various contract houses ("Class") that the Defendant GM unlawfully failed and refused to pay Plaintiffs and members of the Plaintiff Class overtime pay for overtime worked, notwithstanding that Plaintiffs and members of the Plaintiff Class were and are paid hourly and are not and have not been exempt from overtime pay.

4.      Plaintiffs allege on behalf of themselves and the proposed Plaintiff Class that they are and have been entitled to overtime pay for overtime worked.

5.      Plaintiffs allege on behalf of themselves and the prospective Plaintiff Class that Defendant GM failed to keep accurate time records as required by law.

{H0668171.4}

2

6.     Defendant's practices as alleged herein violated and continue to violate the FLSA, 29 U.S.C. §201 *et seq.*

7.     Plaintiffs on behalf of themselves and the prospective Class seek injunctive and declaratory relief, compensation and credit for all uncompensated work required, suffered or permitted by Defendant GM, liquidated and/or other damages, penalties and interest as permitted by the applicable law, and attorneys' fees and costs.

8.     At all times relevant to this Complaint, Defendant GM has engaged in and continues to engage in a practice and policy of willfully failing and refusing to pay Plaintiffs and the class they seek to represent overtime compensation due and owing to Plaintiffs and members of the prospective Class in violation of federal law.

9.     Defendant GM implemented and enforced unlawful policies and practices in violation of the federal law, as detailed *infra*, by failing and refusing to pay Plaintiffs and the members of the Class overtime pay for overtime worked, notwithstanding that Plaintiffs and the members of Plaintiff Class were and are paid hourly, are not and have not been exempt, and are and have been entitled to payment for overtime pay.

10.     Defendant GM maintained policies and practices pursuant to which it failed to keep accurate time records and whereby its contracted non-union hourly

employees worked overtime but were not paid overtime pay. Instead, Defendant GM refused to pay Plaintiffs and the class members overtime and, at times, required Plaintiffs and the members of the Class to take compensatory time off in lieu of overtime payments as detailed *infra*, in violation of federal law.

## JURISDICTION AND VENUE

11.     Jurisdiction and venue are proper in the Eastern District of Michigan, Southern Division, as Defendant is licensed to do business and is doing business in Michigan and conducts business in the Eastern District, Southern Division of Michigan. In addition, jurisdiction is proper pursuant to 29 U.S.C. §201 *et seq.* and 28 U.S.C. §1331.

## PARTIES

12.     Plaintiff KELLY GALLAGHER was for all times relevant to this Complaint a resident of Warren, Macomb County, Michigan and was employed with Defendant GM from on or about March 15, 2016, until on or about December 1, 2018. During the course of his employment, he served as a non-union contract employee in the position of Component Validation Engineer for Defendant GM.

13.     Plaintiff ROBERT WYATT is a resident of Westland, Wayne County, Michigan, and was employed with Defendant GM from on or about August 1, 2016, to on or about November 16, 2018. During the course of his employment, he has served as a non-union contract employee in the position of Business Analyst

for Defendant GM.

14.   Defendant GM is a foreign limited liability company who is doing business in the State of Michigan, with its global headquarters located at 300 Renaissance Center, Detroit, Michigan, 48243, and a resident agent located in Bingham Farms, Oakland County, Michigan.

## GENERAL ALLEGATIONS

15.   From at least March 15, 2016, to the present, Defendant GM contracted with several "contract houses," including but not limited to Aerotek and TEKsystems, for contract employees (known as "contract workers") to provide hourly labor, paid hourly, in a variety of Defendant GM's offices and manufacturing plants nationwide, including Michigan.

16.   Defendant's policies note that contract workers are distinct from independent contractors.

17.   Defendant GM's policies designate contract workers as "third parties" but also subject the contract workers to Defendant GM's Code of Conduct and other policies.

18.   On or about November 20, 2018, Defendant GM submitted a report to the Securities and Exchange Commission stating that Defendant GM would reduce its "contract staff" by the end of 2019, and this, along with two other objectives, would impact Defendant GM in the amount of $3.0 billion to $3.8 billion.

19.    Defendant GM maintains a Contract Worker Handbook that it requires all contract houses working with Defendant GM to provide to all of the contract workers supplied to Defendant GM by the contract houses.

20.    Contract houses are required to update the contract workers as to any changes to Defendant GM's policies and procedures set forth in the Contract Worker Handbook.

21.    Defendant GM manages its contract worker program, called the GM Managed Contract Services Program ("GM MCSP"), through a third-party administrator, Allegis Global Solutions ("Allegis").

22.    Pursuant to the Contract Worker Handbook, Defendant GM uses the Allegis "Beeline system" to record contract workers' hours worked and to manage contract workers' services under the GM MCSP.

23.    The Beeline system requires contract workers to submit their timesheets to the contract workers' GM Manager for approval.

24.    In order for contract workers to input hours worked into the Beeline system, contract workers normally must enter a Work Order number, which Defendant GM supplies. A GM Manager advises the contract worker of the correct Work Order number to use.

25.    In order to input hours worked into the Beeline system, contract workers must have a GL Code, which is a unique 26-digit account number that

Defendant GM assigns to the contract worker. A contract worker's GM Manager supplies the correct GL Code for each contract worker to input into the Beeline system.

26.     In order to be credited with hours worked, a contract worker must use the Timecard Submittal Process, which requires the worker to enter a GL Code into the Beeline system, enter the appropriate Work Order number, select a pay code, select the shift worked, save the timecard electronically, and then press an onscreen button labeled "Submit for Approval" in order that the timecard will be sent to the contract worker's GM Manager for approval.

27.     The Contract Worker Handbook outlines an almost identical process to the timecard approval process, for contract workers to obtain GM Manager approval of reimbursement for expenses.

28.     The Contract Worker Handbook expressly recognizes that "overtime" is defined "as any hours worked in excess of 40 hours."

29.     Within the Contract Worker Handbook, Defendant GM makes an exception to overtime for hours worked on Sunday.

30.     The Contract Worker Handbook promises "double time" pay for "any hours worked on a Sunday after 40 hours of Straight time have been achieved."

31.     The Contract Worker Handbook defines "Straight Time" as "the first 40 hours of work in the Monday-Sunday work week."

32.     The Contract Worker Handbook promises overtime pay after 32 hours of straight time are worked in a week with one holiday or after 24 hours of straight time during the Thanksgiving week.

33.     The Contract Worker Handbook promises double time pay to contract workers for work performed on a holiday or Sunday if 32 hours of straight time is also worked.

34.     The Contract Worker Handbook states that a contract worker's work schedule is established by "your GM Assignment Manager" and any deviations from that schedule "must be requested minimally one (1) week in advance and approved by your GM Assignment Manager."

35.     Throughout the Contract Worker Handbook, Defendant GM instructs contract workers to contact the worker's GM Manager or GM Global Security in order to report non-compliance with GM policies and procedures, misconduct in the workplace, harassment or discrimination, health and safety concerns at GM sites, workplace violence, and the presence of weapons on GM property.

36.     Within the Contract Worker Handbook, Defendant GM directs contract workers not to address questions regarding compensation to Allegis or Defendant GM.

37.     Defendant GM specifically states within the Contract Worker Handbook that a contract worker should only contact the contract house about

"timecard or expense reporting, and paycheck or expense reimbursement issues."

38.    Within the Contract Worker Handbook, Defendant GM directs contract workers not to address questions regarding benefits to Allegis or Defendant GM.

39.    Defendant GM controls the contract worker's schedule and duties and ability to record hours worked, but Defendant GM affirmatively prohibits the contract worker from discussing compensation and benefits issues with Defendant GM.

40.    The Contract Worker Handbook also requires contract workers to abide by the GM Travel and Expense Reporting Policy for expenses incurred during travel required as a part of the contract worker's "GM assignment."

41.    Contract workers' travel expense requests must be submitted through the Beeline system with supporting documentation for approval.

42.    Throughout the Contract Worker Handbook, Defendant GM refers to the contract house as "your employer" and states repeatedly and misleadingly that "GM [is] not your employer."

43.    The Contract Worker Handbook states that the "end of assignment" occurs when Defendant GM "closes out" the worker's contract, either because the project is completed, or the contract worker will be hired as a recognized employee of Defendant GM.

**Kelly Gallagher**

44.     On or about March 15, 2016, Defendant GM employed Plaintiff GALLAGHER, through its contracts with Aerotek, to serve as one of Defendant GM's Component Validation Engineers.

45.     On or about December 1, 2018, Plaintiff GALLAGHER's employment with Defendant GM ended.

46.     During Plaintiff GALLAGHER's tenure with Defendant GM, GM required him to work more than 900 hours of uncompensated overtime.

47.     In addition to the unpaid hours of overtime previously stated, Plaintiff GALLAGHER also attended mandatory training classes each year, and Defendant GM failed to pay overtime compensation to Plaintiff GALLAGHER for those overtime hours.

48.     Plaintiff GALLAGHER received payment at an hourly rate on a weekly basis but did not receive overtime compensation.

49.     Defendant GM contracted with Aerotek to employ Plaintiff GALLAGHER, and his employment with Defendant GM was contingent upon the approval of Defendant GM.

50.     Defendant GM controlled Plaintiff GALLAGHER's schedule, duties, and assignments.

51.     Defendant GM required weekly time records for Plaintiff GALLAGHER to be approved by a GM Manager in Defendant GM's timekeeping system before Aerotek would compensate Plaintiff GALLAGHER on behalf of Defendant GM.

52.     Plaintiff GALLAGHER notified his GM Manager, Darrell Patterson, of the substantial overtime he was working and had accrued, and Plaintiff GALLAGHER showed Mr. Patterson detailed records that Plaintiff GALLAGHER kept of his accrued overtime. Plaintiff GALLAGHER asked Mr. Patterson if Plaintiff GALLAGHER could receive overtime pay instead of comp time due to the excessive amount of comp time accrued. Mr. Patterson politely stated he would check into it, but he never gave Plaintiff GALLAGHER an answer to his requests.

53.     Mr. Patterson was a direct employee of Defendant GM.

54.     Plaintiff GALLAGHER notified his second GM Manager, Mark Kohls, of the substantial overtime he was working and had accrued, and Plaintiff GALLAGHER also showed Mr. Kohls detailed records that Plaintiff GALLAGHER kept of his accrued overtime. Plaintiff GALLAGHER asked Mr. Kohls if Plaintiff GALLAGHER could receive overtime pay instead of comp time due to the excessive amount of comp time accrued, but Mr. Kohls denied the request.

55.     Mr. Kohls was a direct employee of Defendant GM.

56.     Plaintiff GALLAGHER's GM Managers and the GM Managers in the Electric Power Steering Design Release Engineer (DRE) Group were aware of the substantial number of hours Plaintiff GALLAGHER was compelled to work based upon his reports to management and his lengthy work hours performed within the presence or under the observation of the GM Managers.

57.     Plaintiff GALLAGHER's GM Managers followed Defendant GM's policies and requirements that compelled Plaintiff GALLAGHER to work unpaid overtime.

58.     Plaintiff GALLAGHER's workload at Defendant GM's facilities often involved his work on double, or even triple, a normal number of projects, which resulted in overtime work.

59.     During his tenure with Defendant GM, Plaintiff GALLAGHER informed his GM Managers of his heavy workload involving many projects.

60.     Regardless of the actual hours Plaintiff GALLAGHER worked his GM Managers refused to approve more than 8 hours per day on his time records.

61.     During one of Plaintiff GALLAGHER's first weeks that included a holiday, Plaintiff  GALLAGHER recorded four 10 hour days, but he was then instructed to reduce his hours because he was told that recording 40 hours worked on a holiday week defeats the purpose of holiday and furlough days to save the cost of contractor worker wages for GM.

62.     Plaintiff GALLAGHER's GM Managers told him to take "comp time" (compensatory time) rather than providing him with monetary compensation for the overtime work hours.

63.     At the start of Plaintiff GALLAGHER's tenure with Defendant GM, his GM Manager, Darrell Patterson, told him and other workers that Defendant GM would not pay overtime and that the workers should keep track of overtime in order to use comp time. Several months before GM terminated Plaintiff GALLAGHER's contract, Mr. Patterson informed Plaintiff GALLAGHER of a new GM policy requiring that comp time be taken within the 2-week period in which it was earned. Plaintiff GALLAGHER was unable to use the comp time in the pay period in which the overtime accrued, and Plaintiff GALLAGHER's work demands rarely permitted him to use more than a slight fraction of the accrued comp time.

64.     After Mr. Kohls became Plaintiff GALLAGHER's GM Manager, Plaintiff GALLAGHER showed Mr. Kohls his detailed overtime records.

65.     Plaintiff GALLAGHER asked Mr. Kohls to receive overtime pay, but Mr. Kohls told him the overtime had to be requested weekly ahead of time, that the GM process to provide for overtime pay was too burdensome for Mr. Kohls to complete, that Plaintiff Gallagher would not receive overtime compensation, and that Plaintiff GALLAGHER should try to use comp time if it was possible.

66.     Plaintiff GALLAGHER did not voluntarily enter into a written agreement to accept compensatory time in lieu of overtime wages before he was compelled to work overtime hours for Defendant GM.

67.     Defendant GM never provided statements of compensatory time earned by or paid to Plaintiff GALLAGHER and affirmatively denied in its record-keeping process that Plaintiff GALLAGHER worked overtime.

68.     Defendant GM did not pay for any of the purported "comp time" upon terminating Plaintiff GALLAGHER's employment even though Plaintiff GALLAGHER had not received overtime pay or received comp time.

69.     On at least one occasion, Plaintiff GALLAGHER entered 32 hours of work into the timekeeping system during a holiday week, even though he had worked far in excess of 40 hours. Mr. Kohls rejected Plaintiff GALLAGHER's assertion of 32 hours of work performed that week, even though it was much less than Plaintiff GALLAGHER actually worked. Plaintiff GALLAGHER was compelled to work several additional hours to collect screen shots of emails, work orders, and projects addressed that week to obtain compensation for even a reduced 32-hour time entry.

70.     In other weeks at the start of Mr. Kohls' management of Plaintiff GALLAGHER, Mr. Kohls initially rejected Plaintiff GALLAGHER's entry of even 40 hours of work even though Plaintiff GALLAGHER had worked well in

excess of 40 hours during those weeks.

71.    Plaintiff GALLAGHER notified personnel at Aerotek about the overtime hours, but Aerotek did not provide him with compensation for the overtime hours.

72.    Plaintiff GALLAGHER notified his Aerotek supervisors, Judy Chicka and later Shaunta Bacon, of the substantial overtime he was working and had accrued, and Plaintiff GALLAGHER also showed Aerotek management personnel the detailed records that Plaintiff GALLAGHER kept of his accrued overtime.

73.    Plaintiff GALLAGHER also notified another employee in Aerotek management, Tiffany Murano, of the substantial overtime he was working and had accrued, and Plaintiff GALLAGHER also showed her detailed records that Plaintiff GALLAGHER kept of his accrued overtime.

74.    Ms. Chika declined to discuss with Plaintiff GALLAGHER that he was compelled to seek comp time in lieu of receiving overtime compensation. Ms. Bacon told Plaintiff GALLAGHER if GM refused to fairly compensate him with overtime pay, then Plaintiff GALLAGHER should try to stop working overtime. Ms. Murano stated that she had no ability to assist Plaintiff GALLAGHER in collecting the unpaid overtime. None of the Aerotek personnel took action to ensure that Defendant GM paid Plaintiff GALLAGHER for his overtime work.

75.    Plaintiff GALLAGHER was required to use the Beeline system described above in order to enter his time worked and obtain approval from his GM Managers.

76.    Once a GM Manager approved his time worked, Plaintiff GALLAGHER would receive an email from the Beeline system, originally in his GM email but later in his personal email, confirming Defendant GM's approval of the hours entered into the timekeeping system.

77.    Aerotek personnel were not involved in approving Plaintiff GALLAGHER's time entries into the Beeline system.

78.    Plaintiff GALLAGHER worked at the GM Tech Center (aka Global Tech Center) in Warren, Michigan; he often worked in the location of the DRE Group; and he worked primarily in the RAN-B (Research North Building) or the Vehicle Engineering Center.

79.    Plaintiff GALLAGHER was generally required to use a security badge to enter and exit Defendant GM's facilities.

80.    Defendant GM also provided Plaintiff GALLAGHER with a GM laptop, and Plaintiff GALLAGHER used a log-in issued by Defendant GM when performing work on the laptop.

81.    Plaintiff GALLAGHER also separately kept detailed records of his overtime work hours.

82. Plaintiff GALLAGHER is aware of other contract workers who engaged in overtime work and were not compensated by Defendant GM for those overtime hours.

**Robert Wyatt**

83. On or about August 1, 2016, Defendant GM employed Plaintiff WYATT, through its contracts with TEKsystems, to serve as one of Defendant GM's Business Analysts.

84. On or about November 16, 2018, Plaintiff WYATT's employment with Defendant GM ended.

85. During Plaintiff WYATT's tenure with Defendant GM, GM required him to work more than 550 hours of uncompensated overtime.

86. Plaintiff WYATT received payment at an hourly rate on a weekly basis but did not receive overtime compensation.

87. Defendant GM contracted with TEKsystems to employ Plaintiff WYATT, and his employment with Defendant GM was contingent upon the approval of Defendant GM.

88. Defendant GM controlled Plaintiff WYATT's schedule, duties, and assignments.

89. Defendant GM required weekly time records from Plaintiff WYATT to be approved by a GM Manager in Defendant GM's timekeeping system before

TEKsystems would compensate Plaintiff WYATT on behalf of Defendant GM.

90.    Plaintiff WYATT notified his GM Manager, Dennis Bodrie, of the substantial overtime he was working and had accrued, and Plaintiff WYATT asked Mr. Bodrie to leave early because of the overtime he already worked, but Mr. Bodrie refused to allow Plaintiff WYATT to cease working overtime.

91.    Mr. Bodrie was a direct employee of Defendant GM.

92.    Plaintiff WYATT notified his second GM Manager, Carroll Fries, of the substantial overtime he was working and had accrued but was not permitted to include in his time entries, but Ms. Fries said she would do nothing about the overtime Plaintiff WYATT had worked.

93.    Ms. Fries was a direct employee of Defendant GM.

94.    Plaintiff WYATT's GM Managers, including Mr. Bodrie, Ms. Fries, and Joe Adams, were aware of the substantial number of hours Plaintiff WYATT was compelled to work based upon his reports to management.

95.    Plaintiff WYATT's GM Managers, including Mr. Bodrie, Ms. Fries, and Mr. Adams, were aware of the substantial number of hours Plaintiff WYATT was compelled to work and his heavy workload because they worked in the same area as he did and could observe his presence in the office.

96.    Plaintiff WYATT's GM Managers, including Mr. Bodrie, Ms. Fries, and Mr. Adams, were aware of the substantial number of hours Plaintiff WYATT

was compelled to work based upon Mr. Bodie's reports to other managers that his group worked extra hours.

97.   Plaintiff WYATT's GM Managers followed Defendant GM's policies and requirements that compelled Plaintiff WYATT to work unpaid overtime.

98.   Plaintiff WYATT's workload at Defendant GM's facilities was such that he was compelled to work through his lunch every day and with only a few minutes of break for lunch approximately once every several days.

99.   Regardless of the actual hours Plaintiff WYATT worked his GM Managers refused to approve more than 8 hours per day on his time records.

100.   Although GM Manager Bodie told Plaintiff WYATT he could leave early to compensate for extra hours previously worked, Mr. Bodie would then assign additional work and prevent Plaintiff WYATT from leaving.

101.   At the start of Plaintiff WYATT's tenure with Defendant GM, his GM Manager, Mr. Bodie, told Plaintiff WYATT that Defendant GM would not pay for overtime and would only pay for 40 hours of work.

102.   Mr. Bodie, on behalf of his superior managers, Ms. Fries and Mr. Adams, refused to allow Plaintiff WYATT to enter more than 40 hours into the Beeline system.

103.   Plaintiff WYATT did not voluntarily enter into a written agreement to accept compensatory time in lieu of overtime wages before he was compelled to

work overtime hours for Defendant GM.

104.   Defendant GM never provided statements of compensatory time earned by or paid to Plaintiff WYATT and affirmatively denied in its record-keeping process that Plaintiff WYATT worked overtime.

105.   Defendant GM did not pay for any of the purported "comp time" upon terminating Plaintiff WYATT's employment even though Plaintiff WYATT had not received overtime pay or received comp time.

106.   On occasion, Mr. Bodrie refused to permit Plaintiff WYATT to enter even 40 hours of work into the timekeeping system, even though Plaintiff WYATT had worked far in excess of 40 hours.

107.   After Mr. Bodrie rejected Plaintiff WYATT's time entries, Plaintiff WYATT was required to alter those time entries in the Beeline system.

108.   Plaintiff WYATT's supervisor at TEKsytems, Marty Hammond, did not provide Plaintiff WYATT with compensation for his overtime hours worked.

109.   Plaintiff WYATT was required to use the Beeline system described above in order to enter his time worked and obtain approval from his GM Managers.

110.   Once a GM Manager approved his time worked, Plaintiff WYATT would receive an email from the Beeline system into Plaintiff WYATT's personal email confirming Defendant GM's approval of the hours entered into the

timekeeping system.

111.   TEKsystem personnel were not involved in approving Plaintiff WYATT's time entries into the Beeline system.

112.   Plaintiff WYATT worked at the GM Renaissance Center in Detroit, Michigan.

113.   Plaintiff WYATT was generally required to use a security badge to enter and exit Defendant GM's facilities.

114.   Defendant GM also provided Plaintiff WYATT with a GM laptop, and Plaintiff WYATT used a log-in issued by Defendant GM when performing work on the laptop.

115.   Plaintiff WYATT also used a phone provided by GM that recorded some of his work hours.

116.   Plaintiff WYATT is aware of other contract workers who engaged in overtime work and were not compensated by Defendant GM for those overtime hours.

117.   Plaintiffs GALLAGHER and WYATT and the class that they seek to represent were required to separately track their overtime hours and not input them into Defendant GM's Beeline system.

118.   Plaintiffs GALLAGHER and WYATT and the class that they seek to represent were required to pursue compensatory time (a/k/a "comp time") in lieu of

being paid 1½ their hourly wages for the overtime they worked, but Defendant GM did not provide the compensatory time off.

119.   Plaintiffs GALLAGHER and WYATT are aware of Defendant GM's overtime policies and practices from the Contract Worker Handbook, their observations of management's application of Defendant GM's policies to reduce the hours entered into the Beeline system for contract workers, the overtime actually worked by others, and the elimination of thousands of contract worker jobs.

120.   Plaintiffs GALLAGHER and WYATT are aware that Defendant GM's policies and practices prevented contract workers from receiving compensation for overtime work, required and then prevented "comp time," and terminated contract workers without compensating them for past overtime work.

## **FLSA CLAIM-COLLECTIVE ACTION ALLEGATIONS**

121.   Plaintiffs and the class they seek to represent allege violations of the FLSA on behalf of all persons who were, are, or will be employed by Defendant throughout the country during the applicable statutes of limitations, who have not been compensated at 1½ times the regular rate of pay for all work performed in excess of forty (40) hours per workweek.

122.   Plaintiffs and the class they seek to represent allege violations of the FLSA based upon the failure to maintain and preserve payroll records or other

records, containing, without limitation, the total hours worked by each class member each workday and total hours worked by each class member each workweek.

123.   Questions of law and fact common to the class as a whole include, but are not limited to, the following:

a.   Whether Defendant GM failed and continues to fail to pay overtime compensation in violation of the FLSA, 29 U.S.C. §201 et seq.;

b.   Whether Defendant GM's policies and practices of its failure to pay overtime to Plaintiffs and the class they seek to represent violate the applicable provisions of the FLSA;

c.   Whether Defendant GM's policies and practices which required and continues to require Plaintiffs and the class they seek to represent to submit time records reflecting only their non-overtime hours violate the applicable provisions of the FLSA;

d.   Whether Defendant GM's policy and practice of maintaining a timekeeping system which prevented and prevents Plaintiffs and the class they seek to represent from documenting their overtime hours worked violates the applicable provisions of the FLSA;

e.   Whether Defendant GM's policy and practice of requiring Plaintiffs and the class they seek to represent to take compensatory time off in lieu of paying overtime to Plaintiffs and the class they seek to represent violates the applicable provisions of the FLSA;

f.   Whether Defendant GM's failure to pay overtime to Plaintiffs and the class they seek to represent was willful within the meaning of the FLSA;

g.   Whether Defendant GM failed and continues to fail to make accurate records of actual time work by Plaintiffs and the class

they seek to represent;

h.  Whether Defendant GM failed and continues to fail to maintain accurate records of actual time worked by Plaintiffs and the class they seek to represent;

i.  Whether Defendant GM failed and continues to fail to report all actual time worked by Plaintiffs and the class they seek to represent; and

j.  Whether Defendant GM failed and continues to fail to preserve accurate records of actual time worked by Plaintiffs and the class they seek to represent.

124.  The claim for violation of the FLSA is brought pursuant to 29 U.S.C. §216(b) for all claims asserted by Plaintiffs on behalf of themselves and the class they seek to represent, because Plaintiffs' claims are similar to the claims of the members of the prospective class.

125.  Plaintiffs and the class they seek to represent are similarly situated, have substantially similar contract agreements and pay provisions and are subject to Defendant GM's common practice, policy or plan of failing to keep accurate records and failing to pay overtime in violation of the FLSA.

126.  Plaintiffs will fairly and adequately represent and protect the interests of the members of the class and subclasses.

127.  Plaintiffs have retained counsel competent and experienced in complex class actions, FLSA, labor law and employment law litigation.

128.  The names and addresses of the Plaintiff putative class members are available from Defendant GM. To the extent required by law, formal notice will be

provided to the prospective class members via first class mail and/or by use of techniques in a form of notice that has been used customarily in class actions, subject to court approval.

## COUNT I
## FLSA CLAIMS AGAINST DEFENDANT GM

129.   Plaintiffs on behalf of themselves and the class they seek to represent allege and incorporate by reference paragraphs 1 through 128.

130.   At all times relevant to this Complaint, Defendant GM has been and continues to be an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA 29 U.S.C. § 203(d).

131.   At all times relevant to this Complaint, Defendant GM employed Plaintiffs and continues to employ putative class members, within the definition of the FLSA 29 U.S.C. § 203(e)(1).

132.   At all times relevant to this Complaint, Defendant GM has had gross operating revenues in excess of $500,000.00, 29 U.S.C. § 203(s)(1)(A)(i) and (ii).

133.   Each of the named Plaintiffs consents to sue in this action pursuant to FLSA.

134.   The FLSA requires each covered employer such as Defendant GM to compensate all non-exempt employees at a rate of not less than 1½ the regular rate of pay for work performed in excess of forty (40) hours in a workweek.

135.   Plaintiffs and the class they seek to represent were and are paid hourly and are not exempt from the right to receive overtime pay under the FLSA.

136.   Plaintiffs and the class they seek to represent are entitled to be paid overtime compensation for all overtime hours worked.

137.   At all times relevant to this Complaint, Defendant GM had a policy and practice of failing and refusing to pay overtime to its contract employees for their hours worked in excess of forty (40) hours per week.

138.   As a result of Defendant GM's failure to compensate its non-union contract employees, including Plaintiffs and the class they seek to represent, at a rate not less than 1½ times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant GM has violated and continues to violate the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

139.   Defendant GM has failed to make, keep and preserve records with respect to each of the Plaintiffs and the class they seek to represent, sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§201 et. seq., including 29 U.S.C. §211(c) and § 215(a).

140.   Defendant GM's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

141.   Plaintiffs on behalf of themselves and the class that they seek to represent are entitled to damages in the amount of their respective unpaid overtime compensation as provided by 29 U.S.C. § 216(b).

142.   Plaintiffs on behalf of themselves and the class that they seek to represent are entitled to liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), as Defendant GM's conduct did not meet both requirements of (1) good faith combined with (2) reasonable grounds for believing its conduct was proper under the FLSA.

143.   Plaintiffs on behalf of themselves and the class that they seek to represent request recovery of their attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the class that they seek to represent pray for the following relief:

A.   Designation of this action as a collective action on behalf of the Plaintiffs and the class they seek to represent pursuant to the FLSA claims and a prompt issuance of notice pursuant to 29 U.S.C. §216(b), to all similarly situated members of the FLSA opt-in class apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. §216(b) and equitable tolling of the statute of limitations from the date of filing this Complaint until the expiration of the deadline for filing consent to sue forms pursuant to 29 U.S.C. §216(b);

B.    A declaratory judgment against Defendant GM and in favor of Plaintiffs and the class they seek to represent that the practices complained of herein are unlawful under the FLSA 29 U.S.C. §201 *et seq*.;

C.    An injunction against Defendant GM and its officers, agents, successors, employees, representatives and any and all persons acting in concert with as provided by law from engaging in each of the unlawful practices, policies and patterns set forth herein;

D.    An award of damages including liquidated and exemplary damages and penalties for delay to be paid by Defendant GM;

E.    Designation of Plaintiffs KELLY C. GALLAGHER and ROBERT WYATT as the class representatives;

F.    Attorneys' fees, costs and interest; and

G.    Any other legal and equitable relief that this Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury.

Respectfully submitted,

Dated: June 20, 2019                    HERTZ SCHRAM PC

By:    */s/ Daniel W. Rucker*
       DANIEL W. RUCKER (P67832)
       PATRICIA A. STAMLER (P35905)
       STEVE J. WEISS (P32174)
       Attorneys for Plaintiffs
       1760 S. Telegraph Road, Suite 300
       Bloomfield Hills, MI  48302
       (248) 335-5000
       drucker@hertzschram.com
       pstamler@hertzschram.com
       sweiss@hertzschram.com