## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| KELLY C. GALLAGHER and ROBERT WYATT, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 3:19-cv-11836 |
| v. | Judge Robert H. Cleland |
| GENERAL MOTORS LLC, | Magistrate Judge Mona K. Majzoub |
| Defendant. | |

## ANSWER TO AMENDED COLLECTIVE ACTION COMPLAINT

Defendant, GENERAL MOTORS LLC ("General Motors" or "GM"), by and through its attorneys, Seyfarth Shaw LLP, and for its Answer to Plaintiff's Amended Complaint (the "Complaint"), states as follows:

## PRELIMINARY STATEMENT

**COMPLAINT ¶1:**

Plaintiff GALLAGHER was for all times relevant to this Complaint a Component Validation Engineer for Defendant GENERAL MOTORS LLC ("GM") and Aerotek CE, a division of Aerotek, Inc. ("Aerotek"), a position for which he was paid hourly and that is not exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA").

**ANSWER:**

GM admits that Plaintiff Gallagher was employed by a company known as Aerotek and that Plaintiff Gallagher was staffed at GM as a Component Validation Engineer.  GM lacks knowledge or information sufficient to form a belief about

whether Plaintiff Gallagher was paid hourly.  GM denies the remaining allegations

set forth in Paragraph 1 of the Complaint.

**COMPLAINT ¶2:**

Plaintiff WYATT was for all times relevant to this Complaint a Business
Analyst for Defendant GM and TEKsystems, Inc. ("TEKsystems"), a position for
which he was paid hourly and that is not exempt from the overtime provisions of
the FLSA.

**ANSWER:**

GM admits that Plaintiff Wyatt was employed by a company known as

TEKsystems and that Plaintiff Wyatt was staffed at GM as a Business Analyst.

GM lacks knowledge or information sufficient to form a belief about whether

Plaintiff Wyatt was paid hourly.  GM denies the remaining allegations set forth in

Paragraph 2 of the Complaint.

**COMPLAINT ¶3:**

Plaintiffs allege on behalf of themselves and all similarly-situated non-union
contract employees hired from various contract houses ("Class") that the
Defendant GM unlawfully failed and refused to pay Plaintiffs and members of the
Plaintiff Class overtime pay for overtime worked, notwithstanding that Plaintiffs
and members of the Plaintiff Class were and are paid hourly and are not and have
not been exempt from overtime pay.

**ANSWER:**

GM admits that Plaintiffs purport to assert the allegations contained in

Paragraph 3 of the Complaint but denies the truth of the allegations contained in

Paragraph 3 of the Complaint, denies that it unlawfully failed and refused to pay

Plaintiffs and members of any Plaintiff Class overtime pay for overtime worked,

58690932v.4

and denies that class or collective action treatment is appropriate.  GM denies any remaining allegations contained in Paragraph 3 of the Complaint.

**COMPLAINT ¶4:**

Plaintiffs allege on behalf of themselves and the proposed Plaintiff Class that they are and have been entitled to overtime pay for overtime worked.

**ANSWER:**

GM admits that Plaintiffs purport to assert the allegations contained in Paragraph 4 of the Complaint but denies the truth of the allegations contained in Paragraph 4 of the Complaint,  denies that Plaintiffs and proposed Plaintiff Class members are and have been entitled to overtime pay for overtime worked, and denies that class or collective action treatment is appropriate.  GM denies any remaining allegations contained in Paragraph 4 of the Complaint.

**COMPLAINT ¶5:**

Plaintiffs allege on behalf of themselves and the prospective Plaintiff Class that Defendant GM failed to keep accurate time records as required by law.

**ANSWER:**

GM admits that Plaintiffs purport to assert the allegations contained in Paragraph 5 of the Complaint but denies the truth of the allegations contained in Paragraph 5 of the Complaint, denies that GM failed to keep accurate time records as required by law, and denies that class or collective action treatment is appropriate.  GM denies any remaining allegations contained in Paragraph 5 of the Complaint.

3

**COMPLAINT ¶6:**

Defendant's practices as alleged herein violated and continue to violate the FLSA, 29 U.S.C. §201 *et seq.*

**ANSWER:**

The allegations contained in Paragraph 6 of the Complaint are legal

conclusions to which no response is required.  To the extent a response is required,

GM denies the allegations contained in Paragraph 6 of the Complaint.

**COMPLAINT ¶7:**

Plaintiffs on behalf of themselves and the prospective Class seek injunctive and declaratory relief, compensation and credit for all uncompensated work required, suffered or permitted by Defendant GM, liquidated and/or other damages, penalties and interest as permitted by the applicable law, and attorneys' fees and costs.

**ANSWER:**

GM admits that Plaintiffs purport to seek the relief identified in Paragraph 7

of the Complaint but denies that Plaintiffs are entitled to any such relief and denies

that class or collective action treatment is appropriate.  GM denies any remaining

allegations contained in Paragraph 7 of the Complaint.

**COMPLAINT ¶8:**

At all times relevant to this Complaint, Defendant GM has engaged in and continues to engage in a practice and policy of willfully failing and refusing to pay Plaintiffs and the class they seek to represent overtime compensation due and owing to Plaintiffs and members of the prospective Class in violation of federal law.

**ANSWER:**

GM denies the allegations contained in Paragraph 8 of the Complaint.

58690932v.4

**COMPLAINT ¶9:**

Defendant GM implemented and enforced unlawful policies and practices in violation of the federal law, as detailed *infra*, by failing and refusing to pay Plaintiffs and the members of the Class overtime pay for overtime worked, notwithstanding that Plaintiffs and the members of Plaintiff Class were and are paid hourly, are not and have not been exempt, and are and have been entitled to payment for overtime pay.

**ANSWER:**

GM denies the allegations contained in Paragraph 9 of the Complaint.

**COMPLAINT ¶10:**

Defendant GM maintained policies and practices pursuant to which it failed to keep accurate time records and whereby its contracted non-union hourly employees worked overtime but were not paid overtime pay.  Instead, Defendant GM refused to pay Plaintiffs and the class members overtime and, at times, required Plaintiffs and the members of the Class to take compensatory time off in lieu of overtime payments as detailed *infra*, in violation of federal law.

**ANSWER:**

GM denies the allegations contained in Paragraph 10 of the Complaint.

## JURISDICTION AND VENUE

**COMPLAINT ¶11:**

Jurisdiction and venue are proper in the Eastern District of Michigan, Southern Division, as Defendant is licensed to do business and is doing business in Michigan and conducts business in the Eastern District, Southern Division of Michigan.  In addition, jurisdiction is proper pursuant to 29 U.S.C. §201 *et seq.* and 28 U.S.C. §1331.

**ANSWER:**

GM admits the allegations contained in Paragraph 11 of the Complaint.

58690932v.4

## PARTIES

**COMPLAINT ¶12:**

Plaintiff KELLY GALLAGHER was for all times relevant to this Complaint a resident of Warren, Macomb County, Michigan and was employed with Defendant GM from on or about March 15, 2016, until on or about December 1, 2018.  During the course of his employment, he served as a non-union contract employee in the position of Component Validation Engineer for Defendant GM.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief about

whether Plaintiff Kelly Gallagher was for all times relevant to this Complaint a

resident of Warren, Macomb County, Michigan.  GM denies the remaining

allegations contained in Paragraph 12 of the Complaint.

**COMPLAINT ¶13:**

Plaintiff ROBERT WYATT is a resident of Westland, Wayne County, Michigan, and was employed with Defendant GM from on or about August 1, 2016, to on or about November 16, 2018.  During the course of his employment, he has served as a non-union contract employee in the position of Business Analyst for Defendant GM.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief about

whether Plaintiff Robert Wyatt is a resident of Westland, Wayne County,

Michigan.  GM denies the remaining allegations contained in Paragraph 13 of the

Complaint.

**COMPLAINT ¶14:**

Defendant GM is a foreign limited liability company who is doing business in the State of Michigan, with its global headquarters located at 300 Renaissance

6

58690932v.4

Center, Detroit, Michigan, 48243, and a resident agent located in Bingham Farms, Oakland County, Michigan.

**ANSWER:**

GM admits the allegations contained in Paragraph 14 of the Complaint.

## GENERAL ALLEGATIONS

**COMPLAINT ¶15:**

From at least March 15, 2016, to the present, Defendant GM contracted with several "contract houses," including but not limited to Aerotek and TEKsystems, for contract employees (known as "contract workers") to provide hourly labor, paid hourly, in a variety of Defendant GM's offices and manufacturing plants nationwide, including Michigan.

**ANSWER:**

GM admits that from at least March 15, 2016, to the present, Aerotek and

TEKsystems provided labor in a variety of GM's offices and manufacturing plants

nationwide, including Michigan.  GM denies the remaining allegations contained

in Paragraph 15 of the Complaint.

**COMPLAINT ¶16:**

Defendant's policies note that contract workers are distinct from independent contractors.

**ANSWER:**

GM denies the allegations contained in Paragraph 16 of the Complaint.

**COMPLAINT ¶17:**

Defendant GM's policies designate contract workers as "third parties" but also subject the contract workers to Defendant GM's Code of Conduct and other policies.

58690932v.4

**ANSWER:**

GM denies the allegations contained in Paragraph 17 of the Complaint.

**COMPLAINT ¶18:**

On or about November 20, 2018, Defendant GM submitted a report to the Securities and Exchange Commission stating that Defendant GM would reduce its "contract staff" by the end of 2019, and this, along with two other objectives, would impact Defendant GM in the amount of $3.0 billion to $3.8 billion.

**ANSWER:**

GM denies the allegations contained in Paragraph 18 of the Complaint.

Further answering, GM states that, on November 26, 2018, it submitted a report to

the Securities and Exchange Commission stating:  "On November 20, 2018, the

General Motors Company (the "Company") Board of Directors approved a plan to

accelerate the Company's transformation for the future (the "Plan").  The Plan is

expected to strengthen the Company's core business, capitalize on the future of

personal mobility, and drive significant cost efficiencies, and it consists, in relevant

part, of (i) restructuring the Global Product Development Group, (ii) realigning

current manufacturing capacity and utilization, and (iii) reducing salaried and

contract staff and capital expenditures. . . . The Company expects to record pre-tax

charges of $3.0 billion to $3.8 billion related to these actions. . . ."

**COMPLAINT ¶19:**

Defendant GM maintains a Contract Worker Handbook that it requires all contract houses working with Defendant GM to provide to all of the contract workers supplied to Defendant GM by the contract houses.

58690932v.4

**ANSWER:**

GM denies the allegations contained in Paragraph 19 of the Complaint.

**COMPLAINT ¶20:**

Contract houses are required to update the contract workers as to any changes to Defendant GM's policies and procedures set forth in the Contract Worker Handbook.

**ANSWER:**

GM denies the allegations contained in Paragraph 20 of the Complaint.

**COMPLAINT ¶21:**

Defendant GM manages its contract worker program, called the GM Managed Contract Services Program ("GM MCSP"), through a third-party administrator, Allegis Global Solutions ("Allegis").

**ANSWER:**

GM admits that Allegis Global Solutions is a third party administrator of the

GM Managed Contract Services Program.  GM denies any remaining allegations

contained in Paragraph 21 of the Complaint.

**COMPLAINT ¶22:**

Pursuant to the Contract Worker Handbook, Defendant GM uses the Allegis "Beeline system" to record contract workers' hours worked and to manage contract workers' services under the GM MCSP.

**ANSWER:**

GM denies the allegations contained in Paragraph 22 of the Complaint.

**COMPLAINT ¶23:**

The Beeline system requires contract workers to submit their timesheets to the contract workers' GM Manager for approval.

58690932v.4

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief about the

truth of the allegations contained in Paragraph 23 of the Complaint.

**COMPLAINT ¶24:**

In order for contract workers to input hours worked into the Beeline system, contract workers normally must enter a Work Order number, which Defendant GM supplies.  A GM Manager advises the contract worker of the correct Work Order number to use.

**ANSWER:**

GM denies the allegations contained in Paragraph 24 of the Complaint.

**COMPLAINT ¶25:**

In order to input hours worked into the Beeline system, contract workers must have a GL Code, which is a unique 26-digit account number that Defendant GM assigns to the contract worker.  A contract worker's GM Manager supplies the correct GL Code for each contract worker to input into the Beeline system.

**ANSWER:**

GM denies the allegations contained in Paragraph 25 of the Complaint.

**COMPLAINT ¶26:**

In order to be credited with hours worked, a contract worker must use the Timecard Submittal Process, which requires the worker to enter a GL Code into the Beeline system, enter the appropriate Work Order number, select a pay code, select the shift worked, save the timecard electronically, and then press an onscreen button labeled "Submit for Approval" in order that the timecard will be sent to the contract worker's GM Manager for approval.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief about the

truth of the allegations contained in Paragraph 26 of the Complaint.

58690932v.4

**COMPLAINT ¶27:**

The Contract Worker Handbook outlines an almost identical process to the timecard approval process, for contract workers to obtain GM Manager approval of reimbursement for expenses.

**ANSWER:**

GM denies the allegations contained in Paragraph 27 of the Complaint.

**COMPLAINT ¶28:**

The Contract Worker Handbook expressly recognizes that "overtime" is defined "as any hours worked in excess of 40 hours."

**ANSWER:**

GM admits that an Allegis Global Solutions document entitled "General Motors Managed Contract Services" addresses a "Billable Code" called "Over Time," which it describes as:  "US: Defined as any hours worked in excess of 40 hours with the exception of hours worked on Sunday.  Canada: Defined as any hours worked in excess of 44 hours (40 hours in Quebec)."   GM denies the remaining allegations contained in Paragraph 28 of the Complaint.

**COMPLAINT ¶29:**

Within the Contract Worker Handbook, Defendant GM makes an exception to overtime for hours worked on Sunday.

**ANSWER:**

GM denies the allegations contained in Paragraph 29 of the Complaint.

**COMPLAINT ¶30:**

The Contract Worker Handbook promises "double time" pay for "any hours worked on a Sunday after 40 hours of Straight time have been achieved."

58690932v.4

**ANSWER:**

GM denies the allegations contained in Paragraph 30 of the Complaint.

**COMPLAINT ¶31:**

The Contract Worker Handbook defines "Straight Time" as "the first 40 hours of work in the Monday-Sunday work week."

**ANSWER:**

GM admits that an Allegis Global Solutions document entitled "General Motors Managed Contract Services" addresses a "Billable Code" called "Straight Time," which it describes as: "US: Defined as the first 40 hours of work in the Monday-Sunday work week Canada: Defined as the first 44 hours of work in the Monday-Sunday work week (40 hours in Quebec)." GM denies the remaining allegations contained in Paragraph 31 of the Complaint.

**COMPLAINT ¶32:**

The Contract Worker Handbook promises overtime pay after 32 hours of straight time are worked in a week with one holiday or after 24 hours of straight time during the Thanksgiving week.

**ANSWER:**

GM denies the allegations contained in Paragraph 32 of the Complaint.

**COMPLAINT ¶33:**

The Contract Worker Handbook promises double-time pay to contract workers for work performed on a holiday or Sunday if 32 hours of straight time is also worked.

**ANSWER:**

GM denies the allegations contained in Paragraph 33 of the Complaint.

12

**COMPLAINT ¶34:**

The Contract Worker Handbook states that a contract worker's work schedule is established by "your GM Assignment Manager" and any deviations from that schedule "must be requested minimally one (1) week in advance and approved by your GM Assignment Manager."

**ANSWER:**

GM admits that an Allegis Global Solutions document entitled "General Motors Managed Contract Services" states: "Your work schedule is established by your GM Assignment Manager. Requests to deviate from the established work schedule must be requested minimally one (1) week in advance and approved by your GM Assignment Manager." GM denies the remaining allegations contained in Paragraph 34 of the Complaint.

**COMPLAINT ¶35:**

Throughout the Contract Worker Handbook, Defendant GM instructs contract workers to contact the worker's GM Manager or GM Global Security in order to report non-compliance with GM policies and procedures, misconduct in the workplace, harassment or discrimination, health and safety concerns at GM sites, workplace violence, and the presence of weapons on GM property.

**ANSWER:**

GM denies the allegations contained in Paragraph 35 of the Complaint.

**COMPLAINT ¶36:**

Within the Contract Worker Handbook, Defendant GM directs contract workers not to address questions regarding compensation to Allegis or Defendant GM.

**ANSWER:**

GM denies the allegations contained in Paragraph 36 of the Complaint.

13

**COMPLAINT ¶37:**

Defendant GM specifically states within the Contract Worker Handbook that a contract worker should only contact the contract house about "timecard or expense reporting, and paycheck or expense reimbursement issues."

**ANSWER:**

GM denies the allegations contained in Paragraph 37 of the Complaint.

**COMPLAINT ¶38:**

Within the Contract Worker Handbook, Defendant GM directs contract workers not to address questions regarding benefits to Allegis or Defendant GM.

**ANSWER:**

GM denies the allegations contained in Paragraph 38 of the Complaint.

**COMPLAINT ¶39:**

Defendant GM controls the contract worker's schedule and duties and ability to record hours worked, but Defendant GM affirmatively prohibits the contract worker from discussing compensation and benefits issues with Defendant GM.

**ANSWER:**

GM denies the allegations contained in Paragraph 39 of the Complaint.

**COMPLAINT ¶40:**

The Contract Worker Handbook also requires contract workers to abide by the GM Travel and Expense Reporting Policy for expenses incurred during travel required as a part of the contract worker's "GM assignment."

**ANSWER:**

GM denies the allegations contained in Paragraph 40 of the Complaint.

**COMPLAINT ¶41:**

Contract workers' travel expense requests must be submitted through the Beeline system with supporting documentation for approval.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 41 of the Complaint.

**COMPLAINT ¶42:**

Throughout the Contract Worker Handbook, Defendant GM refers to the contract house as "your employer" and states repeatedly and misleadingly that "GM [is] not your employer."

**ANSWER:**

GM denies the allegations contained in Paragraph 42 of the Complaint.

**COMPLAINT ¶43:**

The Contract Worker Handbook states that the "end of assignment" occurs when Defendant GM "closes out" the worker's contract, either because the project is completed, or the contract worker will be hired as a recognized employee of Defendant GM.

**ANSWER:**

GM denies the allegations contained in Paragraph 43 of the Complaint.

**Kelly Gallagher**

**COMPLAINT ¶44:**

On or about March 15, 2016, Defendant GM employed Plaintiff GALLAGHER, through its contracts with Aerotek, to serve as one of Defendant GM's Component Validation Engineers.

**ANSWER:**

GM denies the allegations contained in Paragraph 44 of the Complaint.

**COMPLAINT ¶45:**

On or about December 1, 2018, Plaintiff GALLAGHER's employment with Defendant GM ended.

15

**ANSWER:**

GM denies the allegations contained in Paragraph 45 of the Complaint.

**COMPLAINT ¶46:**

During Plaintiff GALLAGHER's tenure with Defendant GM, GM required him to work more than 900 hours of uncompensated overtime.

**ANSWER:**

GM denies the allegations contained in Paragraph 46 of the Complaint.

**COMPLAINT ¶47:**

In addition to the unpaid hours of overtime previously stated, Plaintiff GALLAGHER also attended mandatory training classes each year, and Defendant GM failed to pay overtime compensation to Plaintiff GALLAGHER for those overtime hours.

**ANSWER:**

GM admits that Plaintiff Gallagher attended mandatory training classes.

GM denies the remaining allegations contained in Paragraph 47 of the Complaint.

**COMPLAINT ¶48:**

Plaintiff GALLAGHER received payment at an hourly rate on a weekly basis but did not receive overtime compensation.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 48 of the Complaint.

**COMPLAINT ¶49:**

Defendant GM contracted with Aerotek to employ Plaintiff GALLAGHER, and his employment with Defendant GM was contingent upon the approval of Defendant GM.

**ANSWER:**

GM denies the allegations contained in Paragraph 49 of the Complaint.

**COMPLAINT ¶50:**

Defendant GM controlled Plaintiff GALLAGHER's schedule, duties, and assignments.

**ANSWER:**

GM admits that, while Plaintiff Gallagher was employed by Aerotek and

staffed at GM, GM provided assignments for Plaintiff Gallagher.  GM denies the

remaining allegations contained in Paragraph 50 of the Complaint.

**COMPLAINT ¶51:**

Defendant GM required weekly time records for Plaintiff GALLAGHER to be approved by a GM Manager in Defendant GM's timekeeping system before Aerotek would compensate Plaintiff GALLAGHER on behalf of Defendant GM.

**ANSWER:**

GM denies the allegations contained in Paragraph 51 of the Complaint.

**COMPLAINT ¶52:**

Plaintiff GALLAGHER notified his GM Manager, Darrell Patterson, of the substantial overtime he was working and had accrued, and Plaintiff GALLAGHER showed Mr. Patterson detailed records that Plaintiff GALLAGHER kept of his accrued overtime.  Plaintiff GALLAGHER asked Mr. Patterson if Plaintiff GALLAGHER could receive overtime pay instead of comp time due to the excessive amount of comp time accrued.  Mr. Patterson politely stated he would check into it, but he never gave Plaintiff GALLAGHER an answer to his requests.

**ANSWER:**

GM admits that Plaintiff Gallagher told Darrell Patterson, a GM manager,

that he had worked overtime in the past and that Plaintiff Gallagher showed Darrell

Patterson a document.  GM denies the remaining allegations contained in

Paragraph 52 of the Complaint.

**COMPLAINT ¶53:**

Mr. Patterson was a direct employee of Defendant GM.

**ANSWER:**

GM admits that Darrell Patterson was an employee of GM.  GM denies any

remaining allegations contained in Paragraph 53 of the Complaint.

**COMPLAINT ¶54:**

Plaintiff GALLAGHER notified his second GM Manager, Mark Kohls, of the substantial overtime he was working and had accrued, and Plaintiff GALLAGHER also showed Mr. Kohls detailed records that Plaintiff GALLAGHER kept of his accrued overtime.  Plaintiff GALLAGHER asked Mr. Kohls if Plaintiff GALLAGHER could receive overtime pay instead of comp time due to the excessive amount of comp time accrued, but Mr. Kohls denied the request.

**ANSWER:**

GM admits that Plaintiff Gallagher told Mark Kohls, a GM manager, that he

had worked overtime in the past and that Plaintiff Gallagher showed Mark Kohls a

document.  GM denies the remaining allegations contained in Paragraph 54 of the

Complaint.

**COMPLAINT ¶55:**

Mr. Kohls was a direct employee of Defendant GM.

58690932v.4

**ANSWER:**

GM admits that Mark Kohls was an employee of GM.  GM denies any

remaining allegations contained in Paragraph 55 of the Complaint.

**COMPLAINT ¶56:**

Plaintiff GALLAGHER's GM Managers and the GM Managers in the
Electric Power Steering Design Release Engineer (DRE) Group were aware of the
substantial number of hours Plaintiff GALLAGHER was compelled to work based
upon his reports to management and his lengthy work hours performed within the
presence or under the observation of the GM Managers.

**ANSWER:**

GM denies the allegations contained in Paragraph 56 of the Complaint.

**COMPLAINT ¶57:**

Plaintiff GALLAGHER's GM Managers followed Defendant GM's policies
and requirements that compelled Plaintiff GALLAGHER to work unpaid overtime.

**ANSWER:**

GM denies the allegations contained in Paragraph 57 of the Complaint.

**COMPLAINT ¶58:**

Plaintiff GALLAGHER's workload at Defendant GM's facilities often
involved his work on double, or even triple, a normal number of projects, which
resulted in overtime work.

**ANSWER:**

GM denies the allegations contained in Paragraph 58 of the Complaint.

**COMPLAINT ¶59:**

During his tenure with Defendant GM, Plaintiff GALLAGHER informed his
GM Managers of his heavy workload involving many projects.

58690932v.4

**ANSWER:**

GM denies the allegations contained in Paragraph 59 of the Complaint.

**COMPLAINT ¶60:**

Regardless of the actual hours Plaintiff GALLAGHER worked his GM Managers refused to approve more than 8 hours per day on his time records.

**ANSWER:**

GM denies the allegations contained in Paragraph 60 of the Complaint.

**COMPLAINT ¶61:**

During one of Plaintiff GALLAGHER's first weeks that included a holiday, Plaintiff GALLAGHER recorded four 10 hour days, but he was then instructed to reduce his hours because he was told that recording 40 hours worked on a holiday week defeats the purpose of holiday and furlough days to save the cost of contractor worker wages for GM.

**ANSWER:**

GM denies the allegations contained in Paragraph 61 of the Complaint.

**COMPLAINT ¶62:**

Plaintiff GALLAGHER's GM Managers told him to take "comp time" (compensatory time) rather than providing him with monetary compensation for the overtime work hours.

**ANSWER:**

GM denies the allegations contained in Paragraph 62 of the Complaint.

**COMPLAINT ¶63:**

At the start of Plaintiff GALLAGHER's tenure with Defendant GM, his GM Manager, Darrell Patterson, told him and other workers that Defendant GM would not pay overtime and that the workers should keep track of overtime in order to use comp time. Several months before GM terminated Plaintiff GALLAGHER's contract, Mr. Patterson informed Plaintiff GALLAGHER of a new GM policy requiring that comp time be taken within the 2-week period in which it was earned.

Plaintiff GALLAGHER was unable to use the comp time in the pay period in which the overtime accrued, and Plaintiff GALLAGHER's work demands rarely permitted him to use more than a slight fraction of the accrued comp time.

**ANSWER:**

GM denies the allegations contained in Paragraph 63 of the Complaint.

**COMPLAINT ¶64:**

After Mr. Kohls became Plaintiff GALLAGHER's GM Manager, Plaintiff GALLAGHER showed Mr. Kohls his detailed overtime records.

**ANSWER:**

GM denies the allegations contained in Paragraph 64 of the Complaint.

**COMPLAINT ¶65:**

Plaintiff GALLAGHER asked Mr. Kohls to receive overtime pay, but Mr. Kohls told him the overtime had to be requested weekly ahead of time, that the GM process to provide for overtime pay was too burdensome for Mr. Kohls to complete, that Plaintiff Gallagher would not receive overtime compensation, and that Plaintiff GALLAGHER should try to use comp time if it was possible.

**ANSWER:**

GM denies the allegations contained in Paragraph 65 of the Complaint.

**COMPLAINT ¶66:**

Plaintiff GALLAGHER did not voluntarily enter into a written agreement to accept compensatory time in lieu of overtime wages before he was compelled to work overtime hours for Defendant GM.

**ANSWER:**

GM denies that Plaintiff Gallagher was compelled to work overtime hours

for GM.  GM lacks knowledge or information sufficient to form a belief as to the

truth of the remaining allegations in Paragraph 66 of the Complaint.

**COMPLAINT ¶67:**

Defendant GM never provided statements of compensatory time earned by or paid to Plaintiff GALLAGHER and affirmatively denied in its record-keeping process that Plaintiff GALLAGHER worked overtime.

**ANSWER:**

GM admits that it did not provide Plaintiff Gallagher "statements of compensatory time earned by or paid to Plaintiff Gallagher." GM denies the remaining allegations contained in Paragraph 67 of the Complaint.

**COMPLAINT ¶68:**

Defendant GM did not pay for any of the purported "comp time" upon terminating Plaintiff GALLAGHER's employment even though Plaintiff GALLAGHER had not received overtime pay or received comp time.

**ANSWER:**

GM admits that GM did not pay Plaintiff Gallagher for purported "comp time." GM denies the remaining allegations contained in Paragraph 68 of the Complaint.

**COMPLAINT ¶69:**

On at least one occasion, Plaintiff GALLAGHER entered 32 hours of work into the timekeeping system during a holiday week, even though he had worked far in excess of 40 hours. Mr. Kohls rejected Plaintiff GALLAGHER's assertion of 32 hours of work performed that week, even though it was much less than Plaintiff GALLAGHER actually worked. Plaintiff GALLAGHER was compelled to work several additional hours to collect screen shots of emails, work orders, and projects addressed that week to obtain compensation for even a reduced 32-hour time entry.

**ANSWER:**

GM denies the allegations contained in Paragraph 69 of the Complaint.

**COMPLAINT ¶70:**

In other weeks at the start of Mr. Kohls' management of Plaintiff GALLAGHER, Mr. Kohls initially rejected Plaintiff GALLAGHER's entry of even 40 hours of work even though Plaintiff GALLAGHER had worked well in excess of 40 hours during those weeks.

**ANSWER:**

GM denies the allegations contained in Paragraph 70 of the Complaint.

**COMPLAINT ¶71:**

Plaintiff GALLAGHER notified personnel at Aerotek about the overtime hours, but Aerotek did not provide him with compensation for the overtime hours.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 71 of the Complaint.

**COMPLAINT ¶72:**

Plaintiff GALLAGHER notified his Aerotek supervisors, Judy Chicka and later Shaunta Bacon, of the substantial overtime he was working and had accrued, and Plaintiff GALLAGHER also showed Aerotek management personnel the detailed records that Plaintiff GALLAGHER kept of his accrued overtime.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 72 of the Complaint.

**COMPLAINT ¶73:**

Plaintiff GALLAGHER also notified another employee in Aerotek management, Tiffany Murano, of the substantial overtime he was working and had accrued, and Plaintiff GALLAGHER also showed her detailed records that Plaintiff GALLAGHER kept of his accrued overtime.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 73 of the Complaint.

**COMPLAINT ¶74:**

Ms. Chika declined to discuss with Plaintiff GALLAGHER that he was
compelled to seek comp time in lieu of receiving overtime compensation.  Ms.
Bacon told Plaintiff GALLAGHER if GM refused to fairly compensate him with
overtime pay, then Plaintiff GALLAGHER should try to stop working overtime.
Ms. Murano stated that she had no ability to assist Plaintiff GALLAGHER in
collecting the unpaid overtime.  None of the Aerotek personnel took action to
ensure that Defendant GM paid Plaintiff GALLAGHER for his overtime work.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 74 of the Complaint.

**COMPLAINT ¶75:**

Plaintiff GALLAGHER was required to use the Beeline system described
above in order to enter his time worked and obtain approval from his GM
Managers.

**ANSWER:**

GM admits that, in order for a GM manager to approve Plaintiff Gallagher's

time, he had to enter that time into the Beeline system.  GM lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph 75 of the Complaint.

**COMPLAINT ¶76:**

Once a GM Manager approved his time worked, Plaintiff GALLAGHER
would receive an email from the Beeline system, originally in his GM email but

later in his personal email, confirming Defendant GM's approval of the hours entered into the timekeeping system.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 76 of the Complaint.

**COMPLAINT ¶77:**

Aerotek personnel were not involved in approving Plaintiff GALLAGHER's time entries into the Beeline system.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 77 of the Complaint.

**COMPLAINT ¶78:**

Plaintiff GALLAGHER worked at the GM Tech Center (aka Global Tech Center) in Warren, Michigan; he often worked in the location of the DRE Group; and he worked primarily in the RAN-B (Research North Building) or the Vehicle Engineering Center.

**ANSWER:**

GM admits the allegations contained in Paragraph 78 of the Complaint.

**COMPLAINT ¶79:**

Plaintiff GALLAGHER was generally required to use a security badge to enter and exit Defendant GM's facilities.

**ANSWER:**

GM admits the allegations contained in Paragraph 79 of the Complaint.

58690932v.4

**COMPLAINT ¶80:**

Defendant GM also provided Plaintiff GALLAGHER with a GM laptop, and Plaintiff GALLAGHER used a log-in issued by Defendant GM when performing work on the laptop.

**ANSWER:**

GM admits the allegations contained in Paragraph 80 of the Complaint.

**COMPLAINT ¶81:**

Plaintiff GALLAGHER also separately kept detailed records of his overtime work hours.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth

of Plaintiffs' allegations regarding Plaintiff Gallagher's keeping of records.  GM

denies the remaining allegations contained in Paragraph 81 of the Complaint.

**COMPLAINT ¶82:**

Plaintiff GALLAGHER is aware of other contract workers who engaged in overtime work and were not compensated by Defendant GM for those overtime hours.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth

of Plaintiffs' allegations regarding Plaintiff's Gallagher's awareness of others.  GM

denies the remaining allegations contained in Paragraph 82 of the Complaint.

58690932v.4

**<u>Robert Wyatt</u>**

**<u>COMPLAINT ¶83:</u>**

On or about August 1, 2016, Defendant GM employed Plaintiff WYATT, through its contracts with TEKsystems, to serve as one of Defendant GM's Business Analysts.

**<u>ANSWER:</u>**

GM denies the allegations contained in Paragraph 83 of the Complaint.

**<u>COMPLAINT ¶84:</u>**

On or about November 16, 2018, Plaintiff WYATT's employment with Defendant GM ended.

**<u>ANSWER:</u>**

GM denies the allegations contained in Paragraph 84 of the Complaint.

**<u>COMPLAINT ¶85:</u>**

During Plaintiff WYATT's tenure with Defendant GM, GM required him to work more than 550 hours of uncompensated overtime.

**<u>ANSWER:</u>**

GM denies the allegations contained in Paragraph 85 of the Complaint.

**<u>COMPLAINT ¶86:</u>**

Plaintiff WYATT received payment at an hourly rate on a weekly basis but did not receive overtime compensation.

**<u>ANSWER:</u>**

GM lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 86 of the Complaint.

58690932v.4

**COMPLAINT ¶87:**

Defendant GM contracted with TEKsystems to employ Plaintiff WYATT, and his employment with Defendant GM was contingent upon the approval of Defendant GM.

**ANSWER:**

GM denies the allegations contained in Paragraph 87 of the Complaint.

**COMPLAINT ¶88:**

Defendant GM controlled Plaintiff WYATT's schedule, duties, and assignments.

**ANSWER:**

GM admits that, while Plaintiff Wyatt was employed by TEKsystems and staffed at GM, GM provided assignments for Plaintiff Wyatt.  GM denies the remaining allegations contained in Paragraph 88 of the Complaint.

**COMPLAINT ¶89:**

Defendant GM required weekly time records from Plaintiff WYATT to be approved by a GM Manager in Defendant GM's timekeeping system before TEKsystems would compensate Plaintiff WYATT on behalf of Defendant GM.

**ANSWER:**

GM denies the allegations contained in Paragraph 89 of the Complaint.

**COMPLAINT ¶90:**

Plaintiff WYATT notified his GM Manager, Dennis Bodrie, of the substantial overtime he was working and had accrued, and Plaintiff WYATT asked Mr. Bodrie to leave early because of the overtime he already worked, but Mr. Bodrie refused to allow Plaintiff WYATT to cease working overtime.

**ANSWER:**

GM denies the allegations contained in Paragraph 90 of the Complaint.

**COMPLAINT ¶91:**

Mr. Bodie was a direct employee of Defendant GM.

**ANSWER:**

GM admits that Dennis Bodie was an employee of GM.  GM denies any

remaining allegations contained in Paragraph 91 of the Complaint.

**COMPLAINT ¶92:**

Plaintiff WYATT notified his second GM Manager, Carroll Fries, of the substantial overtime he was working and had accrued but was not permitted to include in his time entries, but Ms. Fries said she would do nothing about the overtime Plaintiff WYATT had worked.

**ANSWER:**

GM denies the allegations contained in Paragraph 92 of the Complaint.

**COMPLAINT ¶93:**

Ms. Fries was a direct employee of Defendant GM.

**ANSWER:**

GM admits that Carroll Fries was an employee of GM.  GM denies any

remaining allegations contained in Paragraph 93 of the Complaint.

**COMPLAINT ¶94:**

Plaintiff WYATT's GM Managers, including Mr. Bodie, Ms. Fries, and Joe Adams, were aware of the substantial number of hours Plaintiff WYATT was compelled to work based upon his reports to management.

**ANSWER:**

GM denies the allegations contained in Paragraph 94 of the Complaint.

58690932v.4

**COMPLAINT ¶95:**

Plaintiff WYATT's GM Managers, including Mr. Bodrie, Ms. Fries, and Mr. Adams, were aware of the substantial number of hours Plaintiff WYATT was compelled to work and his heavy workload because they worked in the same area as he did and could observe his presence in the office.

**ANSWER:**

GM admits that Plaintiff Wyatt sometimes worked in the same area as Mr. Bodrie and worked on the same floor as Ms. Fries and Mr. Adams.  GM denies the remaining allegations contained in Paragraph 95 of the Complaint.

**COMPLAINT ¶96:**

Plaintiff WYATT's GM Managers, including Mr. Bodrie, Ms. Fries, and Mr. Adams, were aware of the substantial number of hours Plaintiff WYATT was compelled to work based upon Mr. Bodrie's reports to other managers that his group worked extra hours.

**ANSWER:**

GM denies the allegations contained in Paragraph 96 of the Complaint.

**COMPLAINT ¶97:**

Plaintiff WYATT's GM Managers followed Defendant GM's policies and requirements that compelled Plaintiff WYATT to work unpaid overtime.

**ANSWER:**

GM denies the allegations contained in Paragraph 97 of the Complaint.

**COMPLAINT ¶98:**

Plaintiff WYATT's workload at Defendant GM's facilities was such that he was compelled to work through his lunch every day and with only a few minutes of break for lunch approximately once every several days.

**ANSWER:**

GM denies the allegations contained in Paragraph 98 of the Complaint.

**COMPLAINT ¶99:**

Regardless of the actual hours Plaintiff WYATT worked his GM Managers refused to approve more than 8 hours per day on his time records.

**ANSWER:**

GM denies the allegations contained in Paragraph 99 of the Complaint.

**COMPLAINT ¶100:**

Although GM Manager Bodrie told Plaintiff WYATT he could leave early to compensate for extra hours previously worked, Mr. Bodrie would then assign additional work and prevent Plaintiff WYATT from leaving.

**ANSWER:**

GM admits GM manager Bodrie told Plaintiff Wyatt on at least one occasion that he could leave early.  GM denies the remaining allegations contained in Paragraph 100 of the Complaint.

**COMPLAINT ¶101:**

At the start of Plaintiff WYATT's tenure with Defendant GM, his GM Manager, Mr. Bodrie, told Plaintiff WYATT that Defendant GM would not pay for overtime and would only pay for 40 hours of work.

**ANSWER:**

GM admits that GM manager Bodrie told Plaintiff Wyatt that his contract did not authorize overtime and that, therefore, Plaintiff Wyatt should not work overtime.  GM denies the remaining allegations contained in Paragraph 101 of the Complaint.

58690932v.4

**COMPLAINT ¶102:**

Mr. Bodrie, on behalf of his superior managers, Ms. Fries and Mr. Adams, refused to allow Plaintiff WYATT to enter more than 40 hours into the Beeline system.

**ANSWER:**

GM denies the allegations contained in Paragraph 102 of the Complaint.

**COMPLAINT ¶103:**

Plaintiff WYATT did not voluntarily enter into a written agreement to accept compensatory time in lieu of overtime wages before he was compelled to work overtime hours for Defendant GM.

**ANSWER:**

GM denies that Plaintiff Gallagher was compelled to work overtime hours for GM.  GM lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 103 of the Complaint.

**COMPLAINT ¶104:**

Defendant GM never provided statements of compensatory time earned by or paid to Plaintiff WYATT and affirmatively denied in its record-keeping process that Plaintiff WYATT worked overtime.

**ANSWER:**

GM admits that it did not provide Plaintiff Wyatt "statements of compensatory time earned by or paid to Plaintiff Wyatt."  GM denies the remaining allegations contained in Paragraph 104 of the Complaint.

**COMPLAINT ¶105:**

Defendant GM did not pay for any of the purported "comp time" upon terminating Plaintiff WYATT's employment even though Plaintiff WYATT had not received overtime pay or received comp time.

**ANSWER:**

GM admits that it did not pay Plaintiff Wyatt for purported "comp time."

GM denies the remaining allegations contained in Paragraph 105 of the Complaint.

**COMPLAINT ¶106:**

On occasion, Mr. Bodrie refused to permit Plaintiff WYATT to enter even 40 hours of work into the timekeeping system, even though Plaintiff WYATT had worked far in excess of 40 hours.

**ANSWER:**

GM denies the allegations contained in Paragraph 106 of the Complaint.

**COMPLAINT ¶107:**

After Mr. Bodrie rejected Plaintiff WYATT's time entries, Plaintiff WYATT was required to alter those time entries in the Beeline system.

**ANSWER:**

GM denies the allegations contained in Paragraph 107 of the Complaint.

**COMPLAINT ¶108:**

Plaintiff WYATT's supervisor at TEKsytems, Marty Hammond, did not provide Plaintiff WYATT with compensation for his overtime hours worked.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 108 of the Complaint.

58690932v.4

**COMPLAINT ¶109:**

Plaintiff WYATT was required to use the Beeline system described above in order to enter his time worked and obtain approval from his GM Managers.

**ANSWER:**

GM admits that, in order for a GM manager to approve Plaintiff Wyatt's time, he had to enter that time into the Beeline system.  GM lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 109 of the Complaint.

**COMPLAINT ¶110:**

Once a GM Manager approved his time worked, Plaintiff WYATT would receive an email from the Beeline system into Plaintiff WYATT's personal email confirming Defendant GM's approval of the hours entered into the timekeeping system.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 110 of the Complaint.

**COMPLAINT ¶111:**

TEKsystem personnel were not involved in approving Plaintiff WYATT's time entries into the Beeline system.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 111 of the Complaint.

58690932v.4

**COMPLAINT ¶112:**

Plaintiff WYATT worked at the GM Renaissance Center in Detroit, Michigan.

**ANSWER:**

GM admits the allegations contained in Paragraph 112 of the Complaint.

**COMPLAINT ¶113:**

Plaintiff WYATT was generally required to use a security badge to enter and exit Defendant GM's facilities.

**ANSWER:**

GM admits the allegations contained in Paragraph 113 of the Complaint.

**COMPLAINT ¶114:**

Defendant GM also provided Plaintiff WYATT with a GM laptop, and Plaintiff WYATT used a log-in issued by Defendant GM when performing work on the laptop.

**ANSWER:**

GM admits the allegations contained in Paragraph 114 of the Complaint.

**COMPLAINT ¶115:**

Plaintiff WYATT also used a phone provided by GM that recorded some of his work hours.

**ANSWER:**

GM admits that it provided a phone to Plaintiff Wyatt.  GM denies the

remaining allegations contained in Paragraph 115 of the Complaint.

58690932v.4

**COMPLAINT ¶116:**

Plaintiff WYATT is aware of other contract workers who engaged in overtime work and were not compensated by Defendant GM for those overtime hours.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 116 of the Complaint.

**COMPLAINT ¶117:**

Plaintiffs GALLAGHER and WYATT and the class that they seek to represent were required to separately track their overtime hours and not input them into Defendant GM's Beeline system.

**ANSWER:**

GM denies the allegations contained in Paragraph 117 of the Complaint.

**COMPLAINT ¶118:**

Plaintiffs GALLAGHER and WYATT and the class that they seek to represent were required to pursue compensatory time (a/k/a "comp time") in lieu of being paid 1½ their hourly wages for the overtime they worked, but Defendant GM did not provide the compensatory time off.

**ANSWER:**

GM denies the allegations contained in Paragraph 118 of the Complaint.

**COMPLAINT ¶119:**

Plaintiffs GALLAGHER and WYATT are aware of Defendant GM's overtime policies and practices from the Contract Worker Handbook, their observations of management's application of Defendant GM's policies to reduce the hours entered into the Beeline system for contract workers, the overtime actually worked by others, and the elimination of thousands of contract worker jobs.

**ANSWER:**

GM denies the allegations contained in Paragraph 119 of the Complaint.

**COMPLAINT ¶120:**

Plaintiffs GALLAGHER and WYATT are aware that Defendant GM's policies and practices prevented contract workers from receiving compensation for overtime work, required and then prevented "comp time," and terminated contract workers without compensating them for past overtime work.

**ANSWER:**

GM denies the allegations contained in Paragraph 120 of the Complaint.

## FLSA CLAIM-COLLECTIVE ACTION ALLEGATIONS

**COMPLAINT ¶121:**

Plaintiffs and the class they seek to represent allege violations of the FLSA on behalf of all persons who were, are, or will be employed by Defendant throughout the country during the applicable statutes of limitations, who have not been compensated at 1½ times the regular rate of pay for all work performed in excess of forty (40) hours per workweek.

**ANSWER:**

GM admits that Plaintiffs purport to allege violations of the FLSA but denies

the truth of Plaintiffs' allegations, denies that Plaintiffs may seek to represent a

"class . . . of all persons who were, are, or will be employed by Defendant

throughout the country during the applicable statutes of limitations, who have not

been compensated at 1½ times the regular rate of pay for all work performed in

excess of forty (40) hours per workweek," and denies that class or collective action

treatment is appropriate.  GM denies any remaining allegations in Paragraph 121 of

the Complaint.

58690932v.4

**COMPLAINT ¶122:**

Plaintiffs and the class they seek to represent allege violations of the FLSA based upon the failure to maintain and preserve payroll records or other records, containing, without limitation, the total hours worked by each class member each workday and total hours worked by each class member each workweek.

**ANSWER:**

GM admits that Plaintiffs purport to allege violations of the FLSA but denies the truth of Plaintiffs' allegations, denies that Plaintiffs may seek to represent a "class," and denies that class or collective action treatment is appropriate. GM denies any remaining allegations in Paragraph 122 of the Complaint.

**COMPLAINT ¶123:**

Questions of law and fact common to the class as a whole include, but are not limited to, the following:

a. Whether Defendant GM failed and continues to fail to pay overtime compensation in violation of the FLSA, 29 U.S.C. §201 et seq.;

b. Whether Defendant GM's policies and practices of its failure to pay overtime to Plaintiffs and the class they seek to represent violate the applicable provisions of the FLSA;

c. Whether Defendant GM's policies and practices which required and continues to require Plaintiffs and the class they seek to represent to submit time records reflecting only their non-overtime hours violate the applicable provisions of the FLSA;

d. Whether Defendant GM's policy and practice of maintaining a timekeeping system which prevented and prevents Plaintiffs and the class they seek to represent from documenting their overtime hours worked violates the applicable provisions of the FLSA;

e. Whether Defendant GM's policy and practice of requiring Plaintiffs and the class they seek to represent to take compensatory time off in

lieu of paying overtime to Plaintiffs and the class they seek to represent violates the applicable provisions of the FLSA;

f.    Whether Defendant GM's failure to pay overtime to Plaintiffs and the class they seek to represent was willful within the meaning of the FLSA;

g.    Whether Defendant GM failed and continues to fail to make accurate records of actual time work by Plaintiffs and the class they seek to represent;

h.    Whether Defendant GM failed and continues to fail to maintain accurate records of actual time worked by Plaintiffs and the class they seek to represent;

i.    Whether Defendant GM failed and continues to fail to report all actual time worked by Plaintiffs and the class they seek to represent; and

j.    Whether Defendant GM failed and continues to fail to preserve accurate records of actual time worked by Plaintiffs and the class they seek to represent.

**ANSWER:**

GM denies the allegations contained in Paragraph 123 of the Complaint.

**COMPLAINT ¶124:**

The claim for violation of the FLSA is brought pursuant to 29 U.S.C. §216(b) for all claims asserted by Plaintiffs on behalf of themselves and the class they seek to represent, because Plaintiffs' claims are similar to the claims of the members of the prospective class.

**ANSWER:**

GM admits that Plaintiffs purport to bring a claim for violation of the FLSA

pursuant to 29 U.S.C. § 216(b) but denies that Plaintiffs may seek to represent a

"class," and denies that class or collective action treatment is appropriate.  GM

denies any remaining allegations contained in Paragraph 124 of the Complaint.

58690932v.4

**COMPLAINT ¶125:**

Plaintiffs and the class they seek to represent are similarly situated, have substantially similar contract agreements and pay provisions and are subject to Defendant GM's common practice, policy or plan of failing to keep accurate records and failing to pay overtime in violation of the FLSA.

**ANSWER:**

GM denies the allegations contained in Paragraph 125 of the Complaint.

**COMPLAINT ¶126:**

Plaintiffs will fairly and adequately represent and protect the interests of the members of the class and subclasses.

**ANSWER:**

GM denies the allegations contained in Paragraph 126 of the Complaint.

**COMPLAINT ¶127:**

Plaintiffs have retained counsel competent and experienced in complex class actions, FLSA, labor law and employment law litigation.

**ANSWER:**

GM admits that Plaintiffs have retained counsel.  GM lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 127 of the Complaint.

**COMPLAINT ¶128:**

The names and addresses of the Plaintiff putative class members are available from Defendant GM.  To the extent required by law, formal notice will be provided to the prospective class members via first class mail and/or by use of techniques in a form of notice that has been used customarily in class actions, subject to court approval.

**ANSWER:**

GM denies the allegations contained in Paragraph 128 of the Complaint.

## COUNT I
## FLSA CLAIMS AGAINST DEFENDANT GM

**COMPLAINT ¶129:**

Plaintiffs on behalf of themselves and the class they seek to represent allege and incorporate by reference paragraphs 1 through 128.

**ANSWER:**

GM incorporates by reference its answers to Paragraphs 1 through 128 of the

Complaint as if fully set forth herein.

**COMPLAINT ¶130:**

At all times relevant to this Complaint, Defendant GM has been and continues to be an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA 29 U.S.C. § 203(d).

**ANSWER:**

GM admits the allegations contained in Paragraph 130 of the Complaint.

**COMPLAINT ¶131:**

At all times relevant to this Complaint, Defendant GM employed Plaintiffs and continues to employ putative class members, within the definition of the FLSA 29 U.S.C. § 203(e)(1).

**ANSWER:**

GM denies the allegations in Paragraph 131 of the Complaint.

**COMPLAINT ¶132:**

At all times relevant to this Complaint, Defendant GM has had gross operating revenues in excess of $500,000.00, 29 U.S.C. § 203(s)(1)(A)(i) and (ii).

**ANSWER:**

GM admits the allegations contained in Paragraph 132 of the Complaint.

**COMPLAINT ¶133:**

Each of the named Plaintiffs consents to sue in this action pursuant to FLSA.

**ANSWER:**

GM admits that Plaintiffs purported to file documents entitled "Consent To

Join Form" with the Court on July 9, 2019.  GM lacks knowledge or information

sufficient to form a belief as to the truth of any remaining allegations in Paragraph

133 of the Complaint.

**COMPLAINT ¶134:**

The FLSA requires each covered employer such as Defendant GM to
compensate all non-exempt employees at a rate of not less than 1½ the regular rate
of pay for work performed in excess of forty (40) hours in a workweek.

**ANSWER:**

The allegations contained in Paragraph 134 of the Complaint are legal

conclusions to which no response pleading is required.  To the extent an answer is

required, GM denies the allegations in Paragraph 134 of the Complaint.

**COMPLAINT ¶135:**

Plaintiffs and the class they seek to represent were and are paid hourly and
are not exempt from the right to receive overtime pay under the FLSA.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth

of the allegation that Plaintiffs and the persons they seek to represent "were and are

paid hourly and are not exempt from the right to receive overtime pay under the FLSA." GM denies that Plaintiffs and the persons they seek to represent were or are entitled to receive overtime pay from GM and denies the remaining allegations contained in Paragraph 135 of the Complaint.

**COMPLAINT ¶136:**

Plaintiffs and the class they seek to represent are entitled to be paid overtime compensation for all overtime hours worked.

**ANSWER:**

GM lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiffs and the persons they seek to represent "are entitled to be paid overtime compensation for all overtime hours worked." GM denies that Plaintiffs and the persons Plaintiff seek to represent are entitled to overtime compensation from GM and denies the remaining allegations contained in Paragraph 136 of the Complaint.

**COMPLAINT ¶137:**

At all times relevant to this Complaint, Defendant GM had a policy and practice of failing and refusing to pay overtime to its contract employees for their hours worked in excess of forty (40) hours per week.

**ANSWER:**

GM denies the allegations contained in Paragraph 137 of the Complaint.

**COMPLAINT ¶138:**

As a result of Defendant GM's failure to compensate its non-union contract employees, including Plaintiffs and the class they seek to represent, at a rate not less than 1½ times the regular rate of pay for work performed in excess of forty

(40) hours in a workweek, Defendant GM has violated and continues to violate the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

**ANSWER:**

The allegations contained in Paragraph 138 of the Complaint are legal conclusions to which no responsive pleading is required.  To the extent an answer is required, GM denies the allegations contained in Paragraph 138 of the Complaint.

**COMPLAINT ¶139:**

Defendant GM has failed to make, keep and preserve records with respect to each of the Plaintiffs and the class they seek to represent, sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§201 et. seq., including 29 U.S.C. §211(c) and § 215(a).

**ANSWER:**

The allegations contained in Paragraph 139 of the Complaint are legal conclusions to which no responsive pleading is required.  To the extent an answer is required, GM denies the allegations contained in Paragraph 139 of the Complaint.

**COMPLAINT ¶140:**

Defendant GM's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

**ANSWER:**

The allegations contained in Paragraph 140 of the Complaint are legal conclusions to which no responsive pleading is required.  To the extent an answer

is required, GM denies the remaining allegations in Paragraph 140 of the

Complaint.

**COMPLAINT ¶141:**

Plaintiffs on behalf of themselves and the class that they seek to represent are entitled to damages in the amount of their respective unpaid overtime compensation as provided by 29 U.S.C. § 216(b).

**ANSWER:**

GM denies the allegations contained in Paragraph 141 of the Complaint.

**COMPLAINT ¶142:**

Plaintiffs on behalf of themselves and the class that they seek to represent are entitled to liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), as Defendant GM's conduct did not meet both requirements of (1) good faith combined with (2) reasonable grounds for believing its conduct was proper under the FLSA.

**ANSWER:**

GM denies the allegations contained in Paragraph 142 of the Complaint.

**COMPLAINT ¶143:**

Plaintiffs on behalf of themselves and the class that they seek to represent request recovery of their attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b).

**ANSWER:**

GM admits that Plaintiffs purport to request recovery of their attorneys' fees

and costs but denies that Plaintiffs are entitled to any such recovery.  GM denies

the remaining allegations in Paragraph 143 of the Complaint.

58690932v.4

## **AFFIRMATIVE DEFENSES**

GM asserts the following affirmative and other defenses without assuming any burdens of production or proof that, pursuant to law, belong to Plaintiffs. GM reserves the right to amend its Answer and Affirmative and Other Defenses to Plaintiffs' Amended Collective Action Complaint and to assert any affirmative or other defenses as may become available or apparent during the course of this litigation.

1.    Plaintiffs' claims are barred, in whole or in part, because GM acted in good faith and had reasonable grounds for believing that it acted properly with respect to Plaintiffs.

2.    Plaintiffs' claims are barred, in whole or in part, because GM acted in good faith in conformity with and reliance upon administrative regulations, orders, rulings, approvals, interpretations, and written and unwritten administrative practices or enforcement policies of the Administrator of the Wage and Hour Division of the United State Department of Labor.

3.    Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

4.    Plaintiffs' claims are barred, in whole or in part, by statutory exemptions, exclusions, exceptions, setoffs, or credits under the FLSA.

58690932v.4

5.     Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, or unclean hands to the extent that Plaintiffs' own conduct resulted in them not being paid for all hours worked or otherwise compensated in accordance with the FLSA.

6.     Plaintiffs' claims are barred, in whole or in part, to the extent that any allegedly uncompensated time or unpaid wages fall within the *de minimis* doctrine.

7.     Plaintiffs are not entitled to liquidated damages, penalties, multiplication of damages, or extension of any statute of limitations period because GM did not willfully, knowingly, or intentionally fail to comply with compensation provisions of the FLSA.

8.     Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs failed to mitigate their damages to the extent they failed to avail themselves of the reporting mechanisms, open door policies, and/or grievance procedures available to them.

9.     Plaintiffs' claims are barred, in whole or in part, because GM exercised reasonable care to prevent, investigate, and promptly correct any alleged violations of law or policy, and Plaintiffs unreasonably failed to avail themselves of these preventive and corrective opportunities or otherwise to avoid harm.

10.     Plaintiffs' claims are barred, in whole or in part, because any recovery from Defendant would result in the unjust enrichment of Plaintiffs.

58690932v.4

11.     Plaintiffs' claims are barred, in whole or in part, because to the extent they sustained any damages, although such is specifically denied, GM is entitled to an offset for all obligations of Plaintiffs for any payments they received for hours they did not work and/or for other compensation they received to which they were not entitled.

12.     Plaintiffs are not entitled to a jury trial as to any equitable issues raised in the Complaint.

13.     To the extent that Plaintiffs and any individual Plaintiffs purport to represent are subject to arbitration agreements that apply to the claims asserted or issues raised in this action, such individuals are barred from recovery in this forum and must proceed on any claims or issues in bilateral arbitration.

WHEREFORE, GM denies that Plaintiffs are entitled to any relief and requests that Plaintiffs' First Amended Complaint be dismissed in its entirety with prejudice, that judgment be entered in GM's favor and that GM be awarded its costs, attorneys' fees, and such other relief as this Court deems appropriate.

## **JURY DEMAND**

Defendant demands trial by jury on all issues so triable in this forum.

58690932v.4

DATED:  September 3, 2019

Respectfully submitted,

SEYFARTH SHAW LLP


By:  /s/ Kevin J. Lesinski
        One of Its Attorneys

Gerald L. Maatman, Jr.
gmaatman@seyfarth.com
David Rowland
drowland@seyfarth.com
Jennifer A. Riley
jriley@seyfarth.com
Alex W. Karasik
akarasik@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Dr., Suite 8000
Chicago, Illinois  60606
SEYFARTH SHAW LLP
Telephone:   (312) 460-5000
Facsimile:   (312) 460-7000

Attorneys for Defendant

Kevin J. Lesinski (MI Bar #P38437)
klesinski@seyfarth.com
SEYFARTH SHAW LLP
560 Mission Street
31st Floor
San Francisco, CA  94105-2930
Telephone: (415) 544-1083
Facsimile:  (415) 397-2823

Attorney for Defendant

58690932v.4

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that he served a cop[y of the foregoing

**DEFENDANT'S ANSWER TO AMENDED COLLECTIVE ACTION COMPLAINT** on the

following through the Court's electronic case filing system on this 3rd day of

September, 2019:

> Patricia A. Stamler
> Steve J. Weiss
> Daniel W. Rucker
> Hertz Schram
> 1760 S. Telegraph Road
> Suite 300
> Bloomfield Hills, MI 48302
> 248-335-5000
> pstamler@hertzschram.com
> sweiss@hertzschram.com
> drucker@hertzschram.com
>
> Attorneys for Plaintiffs

> By:  /s/ Kevin J. Lesinski