## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

KELLY C. GALLAGHER, and
ROBERT WYATT

      Plaintiff,

v.                                       Case No. 19-11836

GENERAL MOTORS COMPANY,

      Defendant.

_____/

### OPINION AND ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION TO CERTIFY CLASS AND FOR JUDICIAL NOTICE

Plaintiffs Kelly C. Gallagher and Robert Wyatt bring this action against Defendant General Motors Company claiming violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (ECF No. 1.) Plaintiffs allege Defendant failed to pay its non-union contract employees overtime wages, and that Defendant did not keep and preserve required records. (*Id.*, PageID.65, ¶¶ 138-39.)

Plaintiffs move for conditional certification of a collective action under the FLSA, 29 U.S.C. § 216(b), and request permission to send proposed class members notice. (ECF No. 21.) Defendant has filed a response and Plaintiffs have replied. (ECF Nos. 27, 28.) The court finds a hearing unnecessary, E.D. Mich. L.R. 7.1(f)(2), and for the reasons provided below, the court will deny Plaintiffs' motion without prejudice.

### I.  BACKGROUND

Plaintiffs allege the following facts in their complaint. (ECF No. 8.) The court makes no overt finding as to truth or falsity.

Defendant is a major automobile manufacturer. Plaintiffs are former non-union employees of Defendant. (ECF No. 8, PageID.43-44, ¶¶ 12-13; *id.*, PageID.41, ¶ 3; *id.*, PageID.48-49, ¶ 44; *id.*, PageID.55-56, ¶ 83.) Defendant received Plaintiffs' services as part of Defendant's agreements with third-party contract houses. (*Id.*, PageID.41, ¶ 3; *id.*, PageID.48-49, ¶ 44; *id.*, PageID.55-56, ¶ 83.) The contract houses would pay Plaintiffs' salaries, while Defendant would allegedly manage Plaintiffs' day-to-day responsibilities. (*Id.*, PageID.49-50, ¶¶ 50-51; *id.*, PageID.56, ¶¶ 88-89.) Defendant controlled approval for hours recorded on official timesheets, as well as approval for business expenses. (*Id.*, PageID.45-46, ¶¶ 23, 27.)

Plaintiff Gallagher was a component validation engineer for Defendant and was employed through Defendant's agreement with the contract house Aerotek. (*Id.*, PageID.48-49, ¶ 44.) According to the complaint, Defendant's managers refused to approve hundreds of hours of overtime in over two years of work that Gallagher provided Defendant. (*Id.*, PageID.43, ¶ 12; *id.*, PageID.49, ¶ 46.) Gallagher asserts that he repeatedly informed his supervisors, employees of Defendant, that he was working extensive hours without overtime compensation. (*Id.*, PageID.50-52, ¶¶ 52, 54, 59, 62-63.) The supervisors allegedly stated that Gallagher was to tabulate his overtime hours in off-record notes so he could receive compensation time ("comp time") off in lieu of overtime pay; Gallagher contends that he never received overtime pay or comp time. (*Id.*, PageID.50-53, ¶¶ 52, 54, 62-63, 65, 68.)

Plaintiff Wyatt worked through the contract house TEKsystems as a business analyst for Defendant. (*Id.*, PageID.55-56, ¶ 83.) Wyatt, like Gallagher, alleges that he worked hundreds of hours of overtime and was not adequately compensated. (*Id.*,

PageID.56, ¶ 85.) His supervisors, employed by Defendant, purportedly refused to approve entry of overtime hours onto official timesheets. (*Id.*, PageID.56, ¶¶ 90, 92, 99, 101-02, 106.) Wyatt asserts that the supervisors denied him the ability to leave early in lieu of overtime pay and placed time-intensive work demands on him. (*Id.*, PageID.57-58, ¶¶ 94-96, 98, 100.) He was allegedly not given recognition of the hours he was working. (*Id.*)

Plaintiffs move for conditional certification of a collective action. (ECF No. 21.) They seek to represent:

> All persons who are or have been employed by or worked for General Motors LLC in the capacity of non-union contract workers compensated on an hourly basis during any time from June 20, 2016 forward. General Motors LLC includes any predecessor in interest, agent, subsidiary, alter ego, and/or any other entity operating the subject business or division of the subject business from June 20, 2016 forward.

(*Id.*, PageID.144.) If conditional certification is granted, Plaintiffs request judicial approval to send two notices of this action to all individuals who fall within the class.

## II.  STANDARD

The FLSA establishes a procedure by which employees experiencing similar work conditions can bring an action collectively against their employer. Title 29 U.S.C. § 216(b) states that "[a]n action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." The central phrase is "other employees similarly situated." 29 U.S.C. § 216(b). If a court determines employees are "similarly situated," it may certify a collective action. *Id.*

Certification of collective action under the FLSA is a inquiry distinct from certification of a class action under Federal Rule of Civil Procedure 23. As the Sixth Circuit has held, "the FLSA's 'similarly situated' standard is less demanding than Rule 23's standard." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017). Additionally, "[u]nlike class actions under [Rule] 23, collective actions under FLSA require putative class members to opt into the class." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 583 (6th Cir. 2009), *abrogated on different grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016); *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Although not explicitly mandated by the text of the FLSA, the Sixth Circuit, or the Supreme Court, "[district] [c]ourts typically bifurcate certification of FLSA collective action cases." *Id.* at 397. District courts use the process to improve case management. "At the notice stage, the certification is conditional and by no means final." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Id.* at 547.

For conditional certification, district courts "use a fairly lenient standard that typically results in conditional certification of a representative class." *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). The plaintiff need make only a "modest factual showing." *Comer*, 454 F.3d at 547. Nonetheless, the plaintiff must come forward with evidence that the proposed employees of the collective action

4

are "similarly situated." 29 U.S.C. § 216(b). In making this determination, courts consider three non-exclusive factors: "(1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness and procedural impact of certifying the action as a collective action." *Monroe*, 860 F.3d at 397 (quoting *O'Brien*, 575 F.3d at 584). "Showing a unified policy of violations is not required . . . employees who suffer from a single, FLSA-violating policy or whose claims are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct, are similarly situated." *Id.* at 398 (quoting *O'Brien*, 575 F.3d at 584-85).

There are no defined requirements for when a plaintiff has made a "modest factual showing" to warrant conditional certification of a "similarly situated" class of workers. 29 U.S.C. § 216(b); *Comer*, 454 F.3d at 547. Some courts "have considered factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted[;] and whether as a matter of sound case management a manageable class exists." *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004) (Zatkoff, J.) (citations removed). "[D]istrict courts generally allow [certification]" when there is a "factual showing sufficient to demonstrate that [plaintiffs] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010) (Edmunds, J.). Courts typically do "not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Id.*

## III. DISCUSSION

Plaintiffs contend they are similarly situated to all non-union contract hourly workers, across all job types and departments within Defendant's organization, who have been employed anywhere around the country, at any time, and for any duration in the past four years. Plaintiffs assert they and the proposed class have been subject to the same unlawful overtime policy, although perhaps effectuated by different means and in different environments. Alleged violations include "(1) preventing contract workers from recording overtime hours worked, (2) requiring compensatory time in lieu of overtime pay, (3) refusing to compensate for travel hours resulting in overtime." (ECF No. 21, PageID.161.) Although Plaintiffs have presented modest factual evidence that they themselves were subject to unlawful employment policies, and possibly that a more limited group of non-union contractors were also subject to the same policies, the court will deny conditional certification for the proposed class. *Comer*, 454 F.3d at 547.

Title 29 U.S.C. § 207(a)(1) of the FLSA guarantees overtime payments for certain covered employees. "The [law] provides that employees may not be required to work more than forty hours per seven-day week without overtime compensation at a rate not less than one and one-half times their regular pay." *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 837 (6th Cir. 2002) (citing 29 U.S.C. § 207(a)(1)).

The FLSA's maximum hours standard do not apply to all workers. A worker must be an "employee." 29 U.S.C. § 207(a)(1); 29 U.S.C. § 203(e)(1). The Sixth Circuit has defined employees as "those who as a matter of economic reality are dependent upon the business to which they render service." *Keller v. Miri Microsystems, LLC*, 781 F.3d 799, 807 (6th Cir. 2015). Courts consider "1) the permanency of the relationship

6

between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; 5) the degree of the alleged employer's right to control the manner in which the work is performed; and 6) whether the service rendered is an integral part of the alleged employer's business." *Id.* They also consider "whether the business had authority to hire or fire the plaintiff, and whether the defendant-company maintains the plaintiff's employment records." *Id.*

"[T]he FLSA [also] exempts many categories of employees from [the overtime] requirement," including those "in a bona fide professional capacity." *Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1138 (2018); *Fazekas v. Cleveland Clinic Found. Health Care Ventures, Inc.*, 204 F.3d 673, 675 (6th Cir. 2000) (quoting 29 U.S.C. § 213(a)(1)). Exempt workers include "learned professionals" and "computer employees." 29 C.F.R. § 541.301(a); 29 C.F.R. § 541.400(b).

As part of their original motion for collective action certification, Plaintiffs submitted only affidavits of their own experiences and a contract worker handbook. (ECF Nos. 21-1, 21-2, 21-3.) These items of evidence serve as Plaintiffs' primary support in favor of conditional certification; they submitted in their reply affidavits of two other contractors which the court will address later. (ECF Nos. 28-1, 28-2.)

### A. Evidence Submitted in Plaintiffs' Motion

Plaintiffs' affidavits largely track the allegations in their complaint. Plaintiff Gallagher avers that he worked as a non-union component validation engineer for Defendant. (ECF No. 21-1, PageID.181, ¶ 3.) He was contracted through Aerotek and worked at the GM Tech Center in Warren, Michigan, twenty minutes outside of Detroit.

(*Id.*, PageID.181-82, ¶¶ 4, 7.) Paid hourly, Gallagher worked over 900 hours of
overtime, but was not given overtime pay, or even standard pay, for the time he worked.
(*Id.*, PageID.182-83, ¶¶ 10, 16.) Gallagher's supervisors, employed by Defendant,
refused to approve any reported work time over forty hours and did not keep accurate
time records. (*Id.*, PageID.185, ¶¶ 28-31.) Finally, he asserts that "[Defendant's]
[m]anagers made statements to [him] and others indicating [Defendant's] plan, practice,
and policy that overtime would not be paid." (*Id.*, PageID.183, ¶ 13.) He was aware of
other non-union contractors who were denied overtime compensation, and, "[b]ased
upon information and belief, and in light of personal experience and the Contract
Worker Handbook, contract workers employed [by Defendant] were subject to the same
compensation and overtime plan, practices, and polices as [he] was." (*Id.*, PageID.188,
¶¶ 44, 47.)

Plaintiff Wyatt states that he was employed as a business analyst and was
contracted through TEKsystems. (ECF No. 21-2, PageID.296, ¶¶ 2-3.) He worked at the
Renaissance Center in Detroit. (*Id.*, ¶ 6.) Wyatt worked 550 hours of overtime, but his
managers, employed by Defendant, did not officially record the hours or compensate
him for the time he worked. (*Id.*, PageID.297-98, ¶¶ 9, 16; *id.*, PageID.299-300, ¶ 27.)
Wyatt's affidavit includes the same statement as Gallagher's, that "[Defendant's]
[m]anagers made statements to [him] and others indicating [Defendan'ts] plan, practice,
and policy that overtime would not be paid." (*Id.*, PageID.298, ¶ 13.) He also asserts
that he was "aware that other non-union contract employees were and/or are prevented
by [Defendant] from obtaining compensation for overtime worked" and, "[b]ased on
information and belief, and in light of [his] personal experience and the Contract Worker

Handbook, contract workers employed [by Defendant] were subject to the same compensation and overtime plan, practices, and policies as [he] was." (*Id.*, PageID.302-03, ¶¶ 43, 46.)

Plaintiffs' affidavits, taken on their face, describe FLSA violations on the part of their supervisors and managers, whom Defendant employed. They worked significant overtime hours but were not given official recognition or compensation in return. (ECF No. 21-1, PageID.182-83, ¶¶ 10, 16; ECF No. 21-2 PageID.297-300, ¶¶ 9, 16, 27.) If Plaintiffs are "employees" and non-exempt under the FLSA—which the court need not determine at this preliminary stage of the proceedings—they may be entitled to damages in the amount of unpaid overtime. 29 U.S.C. § 207(a)(1); *Encino Motorcars, LLC*, 138 S.Ct. at 1138; *Wlotkowski*, 267 F.R.D. at 217 (Courts generally do not "decide substantive issues going to the ultimate merits" when reviewing motions for conditional certification). Additionally, the affidavits may be used to prove the existence of FLSA violations by Plaintiffs' supervisors, as applied to other employees they managed. Gallagher worked as a validation engineer at the GM Tech Center, while Wyatt worked at the Renaissance Center as a business analyst. (ECF No. 21-1, PageID.181, ¶ 3; ECF No. 21-2, PageID.296, ¶¶ 2-3.) Plaintiffs describe how their supervisors instructed them that overtime compensation would not be approved and that these policies were applied to other non-union contractors. (ECF No. 21-1, PageID.182-85, ¶¶ 10, 16, 28-31; ECF No. 21-2 PageID.297-300, ¶¶ 9, 13, 16, 27.) The evidence could potentially serve as a "modest factual showing" of FLSA violations for validation engineers at the

GM Tech Center or business analysts at the Renaissance Center.[1] *Comer*, 454 F.3d at 547.

Nonetheless, Plaintiffs make generalized assertions that, "[b]ased on information and belief . . . contract workers employed [by Defendant] were subject to the same compensation and overtime plan, practices, and policies." (ECF No. 21-1, PageID.188, ¶¶ 44, 47; ECF No. 21-2, PageID.302-03, ¶¶ 43, 46.) Yet they provide no detail as to how they came about the "information" that leads them to a "belief" regarding contractors other than those with the same managers, job roles, and locations. Plaintiffs provide no indication as to whom the other contract workers are. The court cannot know if they work in Texas, California, or across the rest of the country. Do they work in different roles, such as nurses and paralegals? Are such other contractors under the same management as are Plaintiffs? Or are these other contractors Plaintiffs' nearest co-workers, also employed as vehicle engineers and business analysts in the Metro-Detroit area? The court is left to speculate.

Plaintiffs also assert that their managers "made statements" that "indicat[ed]" Defendant had a policy of denying overtime pay. (ECF No. 21-1, PageID.183, ¶ 13; ECF No. 21-2, PageID.298, ¶ 13.) No statements from Defendant's managers are quoted and the managers are not identified. The court cannot determine who these managers may have been, what other contractors such managers supervised, and what lead Plaintiffs to believe that the managers' statements "indicated" a common policy. (ECF No. 21-1, PageID.183, ¶ 13; ECF No. 21-2, PageID.298, ¶ 13.)

---

[1]    Even if Defendant were to present affidavits contradicting Plaintiffs' accounts on these categories of contractors, the court would not weigh competing evidence. *Wlotkowski*, 267 F.R.D. at 217.

On Plaintiffs' affidavits alone, certification would not be warranted. Considering "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted[;] and whether as a matter of sound case management a manageable class exists," evidence of Plaintiffs' own experiences added to experiences they claim to have personally witnessed or of which they were made aware, is insufficient to conclude that all non-union contractors are "similarly situated" under the FLSA. 29 U.S.C. § 216(b); *Olivo*, 374 F. Supp. 2d at 548.

No potential plaintiffs are explicitly identified in Plaintiffs' affidavits. *Olivo*, 374 F. Supp. 2d at 548. Plaintiffs attach in their original motion no affidavits from other contractors. *Id.* Besides vague assertions that managers "indicated" a common policy and broad statements that "based on information and belief" Defendant enacted widely applicable rules to deny overtime pay, the court is left with no evidence to find a "widespread discriminatory plan." *Id.*; *see also Wlotkowski*, 267 F.R.D. at 217 ("[D]istrict courts generally allow [certification]" when there is a "factual showing sufficient to demonstrate that [plaintiffs] and potential plaintiffs together were victims of a common policy or plan that violated the law.").

District courts have routinely denied conditional certification when plaintiffs rely primarily on their own description of other workers' employment conditions. *Holmes v. Kelly Servs. USA, LLC*, Case No. 16-13164, 2017 WL 3381415, at *7 (E.D. Mich. Aug. 7, 2017) (Leitman, J.) ("Courts have repeatedly refused to conditionally certify requested collectives where plaintiffs have likewise failed to present evidence about the other employees who would comprise the collective.").

11

In *Carson v. Vibra Healthcare*, the plaintiff, a registered nurse, claimed her employer automatically deducted thirty minutes from her paid hours for meal breaks, despite often requiring the nurse to work through her scheduled breaks. Case No. 10-10642, 2011 WL 1659381, at *1 (E.D. Mich. May 3, 2011) (O'Meara, J.). The nurse sought conditional certification for all employees "whose pay was subject to an automatic [thirty] minute meal period deduction." *Id.* The proposed class extended beyond nurses and included employees across six states and dispersed nationwide, *Id.* The court denied conditional certification. *Id.* at *2. It reasoned that although the plaintiff had presented evidence of her own experience at her specific location of employment, that evidence "[did] not raise an inference that all employees in every job category were subject to similar pressures to work through breaks," and also did not receive adequate compensation. *Id.* The court also noted that the employer had presented evidence of a company-wide policy cancelling automatic meal-time deductions when employees informed management, as required, that they had worked through meal-time allotments. *Id.* at *3. The evidence emphasized the lack of support the nurse had for employees experiencing the same treatment company wide. *Id.*

In *Demorris v. Rite Way Fence, Inc.*, the plaintiff installed fences and guardrails and alleged that his employer had allocated his hours between two corporations to limit overtime pay compensation. Case No. 14-13777, 2015 WL 12990483, at *1 (E.D. Mich. Mar. 30, 2015) (Drain, J.). The plaintiff sought conditional certification for all employees "who were not properly compensated for all hours worked." *Id.* The court reasoned that, although the plaintiff described potential FLSA violations with regard to him and asserted that he had personal knowledge of "similarly situated" employees, "[p]ersonal

knowledge [of other employees] alone . . . is not sufficient." *Id.* at *3. Without affidavits from other employees or greater detail as to their conditions, the court denied conditional certification. *Id.* at *5.

Finally, in *Cobus v. DuHadway, Kendall & Ass., Inc.*, security officers hired by a private security firm alleged they were not paid overtime for working through their lunch break, as well as arriving early and leaving late from work. Case No. 13-14940, 2014 WL 4181991, at *1-2 (E.D. Mich. Aug. 21, 2015) (Levy, J.). The employer had 149 work sites throughout the State of Michigan, and all twenty-six plaintiffs had worked in only one of two locations. *Id.* at *1, 5. The plaintiffs sought conditional certification for all security officers throughout Michigan who had worked over forty hours in a week but were not paid overtime. *Id.* at *2. The court granted the plaintiffs' request with regard to the two work sites at which the plaintiffs had been employed, and for which the plaintiffs submitted affidavits and time sheets describing their experiences. *Id.* at *3-5. The court denied certification for all other work sites. *Id.* While the plaintiffs had "shown that they [had] the same job duties and the same hours, work[ed] at the same location, and [were] subject to the same time reporting procedures" at the two work locations, they had not shown "sufficient evidence of a company-wide practice that supports authorizing notice to all 149 sites." *Id.* at *4-5.

There are good reasons for denying conditional certification when plaintiffs rely heavily on their own affidavits. Statements plaintiffs make in an affidavit near the beginning of litigation will often directly conform to allegations in their complaint. Very little, if any, discovery has taken place; it is unlikely much information is available to contradict or explore the plaintiffs' original claims. Yet the plaintiffs are required to come

forward with *evidence* of a widespread scheme, plan, or common experience that applies to all "similarly situated" workers in Plaintiffs' proposed class. 29 U.S.C. § 216(b); *Monroe*, 860 F.3d at 397-98; *Comer*, 454 F.3d at 547. Plaintiffs cannot rest on allegations they assert about their own conditions coupled with conclusory statements, "based on information and belief," regarding the conditions of others. (ECF No. 21-1, PageID.188, ¶ 47; ECF No. 21-2, PageID.303, ¶ 46.) Evidence of other workers is central to the court's inquiry, serving to confirm or deny theories of common experience across geographically diverse work environments with different job responsibilities and management. Without such evidence, Plaintiffs have not met their burden of demonstrating a "similarly situated" class. *Comer*, 454 F.3d at 547.

To supplement their affidavits, Plaintiffs submitted a contract worker handbook to support the contention of a company-wide policy to deny overtime compensation, proof of which their affidavits otherwise lack. (ECF No. 21-3.) However, the handbook shows no evidence of an established policy to deny overtime to non-union contract workers.

According to Plaintiffs, the handbook states that a third-party, Allegis, manages Defendant's relationship with contract workers; Defendant does not address worker issues with pay and benefits; managers employed by Defendant control entries for hours worked, and thus overtime hours; any request for overtime must be made in advance and approved by one of Defendant's managers; and it is the contract worker's burden to report violations of the FLSA. (ECF No. 21, PageID.156-57.)

Taken at their word, Plaintiffs assertions about the content of the handbook in no way point to a company-wide policy to deny overtime compensation. Simply having control over the approval of overtime hours does not mean that power is abused or that

14

Defendant is systematically violating the FLSA. Plaintiffs do not contend that the handbook requires that all workers who work over forty hours a week receive pay for working forty or less hours. Nor do Plaintiffs assert the handbook categorically denies overtime pay when earned or replaces overtime pay with comp time. To the contrary, Plaintiffs admit that the handbook's provisions contemplate the provision of overtime pay, and regulate the disbursement of overtime in an organized fashion. Plaintiffs assert contractors must request overtime in advance and managers review hour logs for overtime. (*Id.*) A process for reporting FLSA violations is established. (*Id.*) There would be little need for such procedures if Defendant's explicit policy were to refuse any request for overtime pay, and if FLSA compliance were of no concern to Defendant.

The handbook also provides a process by which a contractor can alter her schedule and work overtime, and if overtime is forced upon contractors without compensation (a violation of the FLSA), the handbook mandates reporting. (ECF No. 21, PageID.156-57; ECF No. 21-3, PageID.416.) The handbook details how overtime is calculated, thereby providing workers with information as to how to enter overtime. (ECF No. 21-3, PageID.414-15.) This evidence further supports the contention that Defendant recognizes overtime, at least in formal policy, and that it is possible for workers to receive overtime pay if they work the hours. By contrast, the handbook does not evince any explicit policy to violate to deny overtime compensation.

### B. Evidence Submitted in Defendant's Response

In response to (and in stark contrast with) Plaintiffs' minimal evidence of similar conditions across Defendant's nationwide operations, Defendant has presented evidence showing varying policies and treatment across a vast array of unique

contractor work environments. The court will not weigh the credibility of Defendant's or Plaintiffs' evidence. *Wlotkowski*, 267 F.R.D. at 217. For instance, the court will not question Plaintiffs' personal experiences simply because Defendant submitted evidence of other contractors who experienced very different conditions. Defendant's submissions serve only to emphasize what is apparent from Plaintiffs' motion, that there has not been a "modest factual showing" that all contractors are "similarly situated."[2] 29 U.S.C. § 216(b); *Comer*, 454 F.3d at 547.

Defendant submits an affidavit of Lori Sellman, Manager of Contract Workforce Management of the United States and Canada, who oversees Defendant's third-party workforce contracting. (ECF No. 27-3.) Ms. Sellman provides numbers and details on contractors providing services to Defendant throughout the country. (*Id.*, PageID.556-57, ¶¶ 6-11.)

Defendant also includes affidavits of supervisors who oversee contractors in different locations. (ECF Nos. 27-4, 27-5, 27-6, 27-7.)  Michael Grills is a personnel director for Defendant who works at a parts distribution center in Brandon, Mississippi. (ECF No. 27-4, PageID.559, ¶ 1.) He previously worked at a processing center in West Chester, Ohio. (*Id.*) Two contract workers Mr. Gills observes in Brandon work substantially different roles. (*Id.*, PageID.560, ¶ 5.) One is an administrative assistant, while another is a nurse. (*Id.*) In West Chester, contractors were used in operations and quality control. (*Id.*)

---

[2]    All subsequent references to Defendant's evidence should be read in the same light.

16

Kenneth Michie is a Group Manager for Creative Sculpting at the GM Tech Center in Warren, Michigan, where Plaintiff Gallagher worked as a component validation engineer. (ECF No. 27-5, PageID.564, ¶ 1.) He oversees one contract worker, who "uses digital programs to design and style the interiors and exteriors of automobiles." (*Id.*, ¶ 3.)

Thomas Hoffman works as a General Assembly Technical Lead for Defendant in Arlington, Texas. (ECF No. 27-7, PageID.574, ¶ 1.) He oversees several contract workers. (*Id.*, ¶ 3.) Some contractors are technicians, who direct vehicle frames to production lines for assembly. (*Id.*, PageID.575, ¶¶ 7-8.) Others work in paper documentation, generating documentation on vehicle upgrades. (*Id.*, ¶¶ 9-10.)

## C. Evidence Submitted in Plaintiffs' Reply

Perhaps recognizing that they presented insufficient evidence to obtain conditional certification, Plaintiffs submitted new affidavits from two other contractors in their reply.[3] The court is generally disinclined to accept new evidence in reply briefs. *See Key v. Shelby Co.*, 551 Fed. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn.*

---

[3] Plaintiffs also submit two exhibits with what appear to be electronic messages. (ECF Nos. 28-3, 28-4.) Plaintiffs title the exhibits as "emails." (*Id.*) One message includes the header "Adam Mouyianis" and includes three sentences. (ECF No. 28-3, PageID.603.) The message states "[the author of the message] worked at GM through contract" and got "comp time in lieu of overtime pay." (*Id.*) Another message contains the header "Gabriel Harris" and simply states "I was not paid ot while working there." (ECF No. 28-4, PageID.605.) Plaintiffs provide no detail as to what these statements are, how they were received, and whom they are from. There is no information as to what services "Adam Moyianis" or "Gabrielle Harris" may have provided for Defendant, at what locations they may have worked, how long they worked with Defendant, what personal experiences they could recount, and whether they even fall within the class of workers Plaintiffs propose for conditional certification. Defendant is not even mentioned in the "Gabrielle Harris" message. (ECF No. 28-4, PageID.605.) The two exhibits lack any factual description by which the court could judge their relevance and importance. Thus, the court will not consider the exhibits in its analysis.

*Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)) (Although discussed in the summary judgment setting, courts should give opposing parties the opportunity to respond "when new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to new evidence has been vitiated."). Even with Plaintiffs' new evidence, they have not presented sufficient evidence to warrant conditional certification. 29 U.S.C. § 216(b); *Comer*, 454 F.3d at 547.

Plaintiffs present the affidavit of Charles E. Gladden III. (ECF No. 28-1.) Gladden worked for Defendant as a vehicle validation engineer through the contract house Iconma. (*Id.*, PageID.592, ¶ 3.) Like Plaintiff Gallagher, Mr. Gladden worked at the GM Tech Center in Warren, Michigan. (*Id.*, PageID.593, ¶ 5.) He describes his own experiences working at Defendant's facility, being repeatedly informed by Defendant's managers verbally to not enter overtime and that he was breaking company rules if he did so. (*Id.*, PageID.593-94, ¶¶ 10-13, 17.) Without description as to how he came to the information, Mr. Gladden states that his experience with Defendant's policies "is similar . . . [to] other contract workers with whom I worked." (*Id.*, PageID.594-95, ¶ 19.)

Plaintiffs also include an affidavit from Ramakrishna Prasad Sundaresan. (ECF No. 28-2.) Mr. Sundaresan, like Plaintiff Gallagher and Mr. Gladden, worked as a validation engineer, specifically for vehicle subsystems. (*Id.*, PageID.597-98, ¶ 3.) He worked for Defendant through the contract house ASG and like Plaintiff Gallagher and Mr. Gladden worked at the GM Tech Center in Warren. (*Id.*, PageID.598, ¶ 6.) Mr. Sundaresan also worked at the GM Milford Proving Grounds in Milford, Michigan, around forty-five minutes outside Detroit. (*Id.*) When deadlines approached, Mr. Sundaresan's manager would inform a team of fifteen engineers, Mr. Sundaresan

included, that extra hours would be needed. (*Id.*, PageID.598-99, ¶ 10.) However, no overtime pay was offered or provided. (*Id.*, PageID.599, ¶ 13.)

### D.  Plaintiffs Fail to Present Sufficient Evidence that All Non-Union Hourly Contract Workers Are "Similarly Situated"

Although now providing evidence of other contractors' work experiences, the two new affidavits do not justify conditional certification of Plaintiffs' proposed class. Plaintiffs seek to represent a nationwide class, covering thousands of contractors at a variety of locations in different states, working unique jobs and under different managers. Defendant's Manager of Contract Workforce Management of the United States and Canada, Lori Sellman, who oversees Defendant's third-party contracting, has stated that contractors work in 236 different roles in 139 locations across twenty-two states. (ECF No. 27-3, PageID.556-57, ¶¶ 8, 10.) There are currently around 2,000 contractors; the total number of contractors who have worked with Defendant in the past four years, which Plaintiffs seek to represent, is undoubtably larger. (*Id.*, PageID.556, ¶ 8.)

Plaintiffs present no evidence and make no assertion to challenge the accuracy of these figures. Beyond statements of their own work experiences, Plaintiffs have presented evidence of only two other contractors throughout Defendant's entire network of operations and facilities. (ECF Nos. 28-1, 28-2.) The two contractors worked the same job as Plaintiff Gallagher; they are validation engineers. (ECF No. 21-1, PageID.181, ¶ 3; ECF No. 28-1, PageID.592, ¶ 3; ECF No. 28-2, PageID.597-98, ¶ 3.) The two contractors and Plaintiffs all worked in Metro-Detroit and the two contractors reported to the same office location as Plaintiff Gallagher, at the GM Tech Center in

Warren, Michigan. (ECF No. 21-1, PageID.182, ¶ 7; ECF No. 21-2, PageID.296, ¶ 6; ECF No. 28-1, PageID.593, ¶ 5; ECF No. 28-2, PageID.598, ¶ 6.) Mr. Sundaresan spent time working in Milford as well. (ECF No. 28-2, PageID.598, ¶ 6.)

Plaintiffs have presented evidence of a business analyst working in Detroit. (ECF No. 21-2, PageID.296, ¶ 2.) But that contractor is a named plaintiff and his assertions largely track the allegations in the complaint. All affidavits Plaintiffs have submitted describe working conditions within in the same metro-area. (ECF No. 21-1, PageID.182, ¶ 7; ECF No. 21-2, PageID.296, ¶ 6; ECF No. 28-1, PageID.593, ¶ 5; ECF No. 28-2, PageID.598, ¶ 6.) It may be that the two new affidavits, in conjunction with Plaintiffs' affidavits, could support certification for validation engineers at the GM Tech Center or even non-union contractors in the Metro-Detroit region. However, such a limited scope of evidence does not present even a "modest factual showing" of widespread overtime violations across all hourly contractors in all locations across all states. *Comer*, 454 F.3d at 547. This is especially the case when Plaintiffs fail to point to a provision in Defendant's workers handbook, or any other employment policy, that applies to all contractors.

The diversity of experiences at Defendant's work locations is not tangential to Plaintiffs' case; it is central to the determination of whether Defendant violated the FLSA. *See, e.g.*, *Wlotkowski*, 267 F.R.D. at 218 (quoting *Witteman v. Wisconsin Bell, Inc.*, Case No. 09-440, 2010 WL 446033, at *1 (W.D. Wis. Feb. 2, 2010)) ("Although defendant devotes most of its brief to an argument that there are numerous differences among the potential class members, it says surprisingly little about the reasons those

alleged differences are relevant for the purpose of determining whether plaintiffs are exempt from the FLSA.").

Contractors work in medicine, law, engineering, computer technology, and administration. (ECF No. 27-3, PageID.557, ¶ 10.) Michael Grills manages contractors in Mississippi, one of whom is administrative and another is a nurse. (ECF No. 27-4, PageID.560, ¶ 5.) He previously worked with vehicle quality control contractors in Ohio. (*Id.*) While the nurse had almost no opportunities to work overtime, contractors in quality control were required to react to spikes in manufacturing output, meaning overtime opportunity abounded. (*Id.*, ¶¶ 6-7.) The administrative assistant fell in the middle, taking overtime as needed to complete work assignments. (*Id.*, ¶ 7.) Mr. Grills does not require prior approval for overtime work. (*Id.*, PageID.561, ¶¶ 9-10.) Kenneth Michie on the other hand, oversees a contract worker in creative design. (ECF No. 27-5, PageID.564, ¶ 3.) "[O]ccasional" projects demand overtime, and Mr. Michie will generally schedule overtime in advance and requests notification from the contractor if he or she believes overtime is necessary. (*Id.*, PageID.565, ¶ 5.) Thomas Hoffman in Texas, by contrast, oversees contractors working overtime on a regular basis and relies on flexible shift arrangements. (ECF No. 27-7, PageID.576-77, ¶¶ 13-14, 17.) The contractors at Mr. Hoffman's facility work as technicians, as well as administrative paper generators. (*Id.*, PageID.575, ¶¶ 7-8, 9-10.) Contractors must work at all hours of the day for six days a week. (*Id.*, PageID.576, ¶ 12.) Although Mr. Hoffman approves overtime hours when submitted, as do the other managers, the contractors themselves determine which shifts to take and when to work. (ECF No. 27-4, PageID.560-61, ¶ 8; ECF No. 27-5, PageID.566, ¶¶ 10-13; ECF No. 27-7, PageID.576-77, ¶¶ 13-14, 17.)

When work spills over from one shift to the next, perhaps from the afternoon to night shift, overtime is submitted and approved. (ECF No. 27-7, PageID.576-77, ¶¶ 13-14, 17.) Plaintiffs present no evidence contradicting these statements.

Factors used in determining whether employees are "similarly situated" under the FLSA weigh against conditional certification. 29 U.S.C. § 216(b). Defendant has shown great diversity in "the factual and employment settings of the individual plaintiffs." *Monroe*, 860 F.3d at 397. Contractors work dramatically different jobs, under different managers with different policies on overtime. Some must submit overtime schedules and receive prior approval while others set their own schedules. (ECF No. 27-5, PageID.565, ¶ 5; ECF No. 27-7, PageID.576-77, ¶¶ 13-14, 17.) Some contractors work overtime weekly and others "occasionally"; still others almost never. (ECF No. 27-4, PageID.560, ¶¶ 6-7; ECF No. 27-5, PageID.565, ¶ 5; ECF No. 27-7, PageID.576-77, ¶¶ 13-14, 17.)

Further, the affidavits of Defendant's managers are just three of a plethora of work contexts. The affidavits demonstrate that the nature of contractors' responsibilities will affect their opportunities for overtime. Contractors who help assemble vehicles must respond to work demands 24/7 and frequently work overtime; contractors who perform project-based work and respond to spikes in demand perform overtime periodically; and contractors who provide scheduled medical services to injured workers have almost no chance of working overtime. (ECF No. 27-4, PageID.560, ¶ 7; ECF No. 27-5, PageID.565, ¶ 5; ECF No. 27-7, PageID.575, ¶¶ 7-8, ¶ 12.) One hundred and thirty-nine work locations for thousands of other individuals only adds to the variance and complexity of contract work. (ECF No. 27-3, PageID.556, ¶ 8.)

22

The managers' affidavits also assert they never denied overtime for contractors to reduce compensation, never asked contractors to enter inaccurate hours, have not pressured contractors to take comp time in lieu of overtime, and have not required contractors to work without breaks. (ECF No. 27-4, PageID.560-62, ¶¶ 8, 12-19; ECF No. 27-5, PageID.565-66, ¶¶ 7, 10-17; ECF No. 27-7, PageID.577-78, ¶¶ 17, 21-28.) The managers state they are unaware of any companywide policy to deny overtime. (ECF No. 27-4, PageID.5662, ¶¶ 15-19; ECF No. 27-5, PageID.566, ¶¶ 13-17; ECF No. 27-7, PageID.578, ¶¶ 23-28.) These conflict with the experiences recounted by the contractors' affidavits included in Plaintiffs' reply. (ECF No. 28-1 PageID.593-94, ¶¶ 10-13, 17; ECF No. 28-2, PageID.599, ¶ 13.) Ramakrishna Prasad Sundaresan makes no statement on whether Defendant has established a companywide policy. While Plaintiffs and Charles E. Gladden III, component engineer at the GM Tech Center, aver generally to overtime policies affecting other contractors, Defendants have provided actual evidence of how those other contractors are treated.[4] (ECF No. 21-1, PageID.183, ¶ 13; ECF No. 21-2, PageID.298, ¶ 13; ECF No. 28-1, PageID.594-95, ¶ 19; ECF No. 27-4, PageID.560-62, ¶¶ 8, 12-19; ECF No. 27-5, PageID.565-66, ¶¶ 7, 10-17; ECF No. 27-7, PageID.577-78, ¶¶ 17, 21-28.)

There are also "different defenses to which the plaintiffs may be subject on an individual basis." *Monroe*, 860 F.3d at 397. First, some contractors may be classified as "employees" governed by the FLSA while others may not. 29 U.S.C. § 207(a)(1); 29 U.S.C. § 203(e)(1). Some are nurses that, by their professional medical training, provide

---

[4]    If Plaintiffs presented evidence of personal experiences and not just general averments, the court would not determine which parties, Plaintiffs or Defendant, presented more convincing evidence. *Wlotkowski*, 267 F.R.D. at 217.

specialized services to Defendant's employees who require medical attention; others are paralegals and engineers who provide their own highly skilled and specialized services. (ECF No. 27-3, PageID.557, ¶ 10; ECF No. 27-4, PageID.560, ¶ 7; ECF No. 28-1, PageID.592, ¶ 3; ECF No. 28-2, PageID.597-98, ¶ 3.) By contrast, some contractors are administrative, working as assistant and clerks. (ECF No. 27-3, PageID.557, ¶ 10; ECF No. 27-4, PageID.560, ¶ 5.) Some contractors may fall in between, such as business analysts or those who work in paper documentation. (ECF No. 21-2, PageID.296, ¶ 2; ECF No. 27-7, PageID.575, ¶¶ 9-10.) All these work responsibilities may result in different legal findings on "the degree of skill required for the rendering of the services." *Keller*, 781 F.3d at 807.

Some contractors are central to Defendant's operations as an automotive manufacturer. Contractors work as technicians that allow Defendant to operate its assembly line. (ECF No. 27-7, PageID.575, ¶¶ 7-8.) However, some are also administrative assistants and clerks, who while important, may not serve a prominent role in the basic functioning of Defendant's business. (ECF No. 27-3, PageID.557, ¶ 10; ECF No. 27-4, PageID.560, ¶ 5.) Considerations of "whether the service[s] rendered [are] an integral part of the alleged employer's business" may differ. *Keller*, 781 F.3d at 807.

Charles E. Gladden III worked as a validation engineer and had a manager, employed by Defendant, who pressured him to provide more work and enter inaccurate hour numbers. (ECF No. 28-1; PageID.593-94, ¶¶ 10-13, 17.) Michael Grills, Kenneth Michie, and Thomas Hoffman all state that they do not pressure or order contractors to submit false time entries, despite working overtime hours. (ECF No. 27-4, PageID.560-

62, ¶¶ 8, 12-19; ECF No. 27-5, PageID.565-66, ¶¶ 7, 10-17; ECF No. 27-7, PageID.577-78, ¶¶ 17, 21-28.) Mr. Grills asserts that he worked in "close proximity" with a contract administrative assistant and could observe the assistant's hours easily. (ECF No. 27-4, PageID.561, ¶ 10.) Mr. Michie states that contractors' work schedules, including overtime, are set in advance. (ECF No. 27-5, PageID.565, ¶ 5.) Conversely, technicians working with Mr. Hoffman had "[n]o . . . manager . . . assigned to supervise [their] day-to-day work," they set their shifts themselves, and submit their time sheets in good faith and regularly receive overtime approval. (ECF No. 27-7, PageID.575-76, ¶¶ 8, 11-12.) Mr. Grills states that he does not require contractors to seek prior approval before working overtime. (ECF No. 27-4, PageID.561, ¶ 9.) Thus, "the degree of the alleged employer's right to control the manner in which the work is performed" may differ depending on the contractor. *Keller*, 781 F.3d at 807.

Second, some contractors may fit within exceptions to FLSA overtime requirements, while others may not. Contractors may fit within the "computer employee" exception. 29 C.F.R. § 541.400. There are contractors who are application architects, Java developers, embedded software engineers, senior software engineers, network infrastructure engineers, and user interface designers. (ECF No. 27-3, PageID.557, ¶ 10.) Analysis on whether the contractor assists "[t]he design, documentation, testing, creation or modification of computer programs related to machine operating systems," thus qualifying for the overtime exemption, may differ depending on the contractor. 29 C.F.R. § 541.400(b)(3).

With all these considerations in mind, "the degree of fairness and procedural impact of certifying the action as a collective action" does not weigh in favor of

conditional certification. *Monroe*, 860 F.3d at 397. Plaintiffs seek to represent all non-union hourly contractors but present evidence of only a narrow group of contractors and fail to contest numerous affidavits from Defendant showing many in the class are not denied overtime compensation. (ECF No. 27-4, PageID.560-62, ¶¶ 8, 12-19; ECF No. 27-5, PageID.565-66, ¶¶ 7, 10-17; ECF No. 27-7, PageID.577-78, ¶¶ 17, 21-28.) Contractors are widely dispersed across the country, working dramatically different jobs under different overtime policies; Defendant may have valid defenses to different contractors based on their responsibilities and work environment. (ECF No. 27-3, PageID.556-57, ¶¶ 8, 10.) Procedural difficulties may abound if the court grants certification.

### E. Factors Weigh Against Conditional Certification

Factors district courts weigh in deciding motions for conditional corticaion weigh against approval of Plaintiffs' proposed class. *Olivo*, 374 F. Supp. 2d at 548. Names and details of potential plaintiffs are lacking. *Id.* Plaintiffs have submitted only two affidavits of potential plaintiffs, both of which are limited in geography and work responsibilities. *Id.* (ECF No. 28-1, PageID.592-93, ¶¶ 3, 5; ECF No. 28-2, PageID.597-98, ¶¶ 3, 6.)

There is no evidence of a widespread policy of overtime violations. *Olivo*, 374 F. Supp. 2d at 548; *see also Wlotkowski*, 267 F.R.D. at 217 (Plaintiffs that obtain conditional certification often show "a common policy or plan"). Plaintiffs' and Charles E. Gladden III's affidavits make conclusory statements that their Metro-Detroit managers appear to believe denying overtime is a company policy. (ECF No. 21-1, PageID.183, ¶ 13; ECF No. 21-2, PageID.298, ¶ 13; ECF No. 28-1, PageID.594-95, ¶ 19.) Ramakrishna Prasad Sundaresan makes no assertion as to whether his experiences

26

were companywide. However, no affidavit presents evidence of personal knowledge or experience regarding overtime practices in other locations. Defendant, meanwhile, has presented evidence of employment practices around the country, including Ohio, Mississippi, Texas, and even Michigan, that flatly contradict the allegation that Defendant employed a systematic policy to infringe contractor's overtime rights. (ECF No. 27-4, PageID.560-62, ¶¶ 8, 12-19; ECF No. 27-5, PageID.565-66, ¶¶ 7, 10-17; ECF No. 27-7, PageID.577-78, ¶¶ 17, 21-28.) Plaintiffs have pointed to no handbook or explicit policy mandating denial of overtime pay or other FLSA abuse.

Finally, work environments are too diverse and contract work too different to have a "manageable class." *Olivo*, 374 F. Supp. 2d at 548. The parties and the court would be required to sort through and decide which non-union contractors were denied overtime pay, which contractors are "employees," and which contractors are non-exempt, to name three major issues with Plaintiffs' case. 29 U.S.C. § 207(a)(1); 29 U.S.C. § 203(e)(1); 29 C.F.R. § 541.400(b). All such contractors, no matter the nuances of their jobs and experiences, are included in Plaintiffs' proposed class.

### F.  Caselaw Supports Denial of Conditional Certification

Caselaw from this district supports the court's conclusion that conditional certification is not warranted.

In *Fisher v. Mich. Bell Telephone Company*, the plaintiffs sought conditional certification for those employed in "service, sales, and similar positions" at six call-center locations in south and central Michigan. 665 F.Supp.2d 819, 822 (E.D. Mich. 2009) (Edmunds, J.). The defendant was a subsidiary of AT&T. *Id.* There were two named plaintiffs in the action, but "104 current and former call center employees" joined

the action. *Id.* at 821. The plaintiffs submitted sixty-seven declarations of employees in support of conditional certification. *Id.* at 822. They mostly worked in one call-center location in Saginaw, Michigan, but others detailed work experiences in three of the remaining five locations. *Id.* The call center employees performed "the same types of jobs," which "were structured in the same way." *Id.* The employees were subject to the same policies and performance requirements, which included a "rounding" policy that disallowed compensation for calls that lasted under seven minutes at the end of the workday. *Id.* 822-23. The plaintiffs alleged they worked overtime but were not adequately compensated. *Id.*

The court granted conditional certification, noting that the plaintiffs had submitted sixty-seven declaration that detailed almost identical work conditions across four of the six Michigan call centers. *Id.* at 825-828.

This case differs substantially. First, the proposed class in *Fischer* was smaller and narrowly targeted to the evidence the *Fischer* plaintiffs could produce on common employment practices. The class proposed in *Fischer* included just six work locations in one state, and the plaintiffs there presented evidence of FLSA violations in four out of six of those locations. 665 F.Supp.2d at 822. By contrast, Plaintiffs seek certification for 139 work locations across twenty-two states; Plaintiffs present evidence of just three locations in one state. (ECF No. 27-3, PageID.556-57, ¶¶ 8, 10; ECF No. 21-1, PageID.182, ¶ 7; ECF No. 21-2, PageID.296, ¶ 6; ECF No. 28-1, PageID.593, ¶ 5; ECF No. 28-2, PageID.598, ¶ 6.) The court in *Fischer* drew upon a large body of non-plaintiff affidavits, totaling sixty-seven. 665 F.Supp.2d at 822. Plaintiffs present two non-plaintiff affidavits. (ECF Nos. 28-1, 28-2.) The *Fischer* court could rely on close similarities of the

employees' jobs, including similar time pressures and performance review programs, to

fairly infer the proposed class was sufficiently "similarly situated." 29 U.S.C. § 216(b);

665 F.Supp.2d at 822. The defendant in *Fischer* even provided "declarations and

exhibits [that] support[ed] [the] [p]laintiffs' claims that . . . [the employees at various] call

centers" experienced similar employment practices. 665 F.Supp.2d at 823. Here,

Plaintiffs' proposed class differs in responsibilities, skills, hours, and work expectations;

their supervisors employ vastly different practices with regard to overtime work. (ECF

No. 28-1; PageID.593-94, ¶¶ 10-13, 17; ECF No. 27-4, PageID.560, ¶¶ 6-7; ECF No.

27-5, PageID.565, ¶ 5; ECF No. 27-7, PageID.576-77, ¶¶ 13-14, 17.)

Finally, the plaintiffs in *Fischer* had evidence of an explicit company policy that

applied to all call-center employees, called "rounding." 665 F.Supp.2d at 822-23. The

plaintiffs in *Fischer* could effectively argue the "rounding" scheme systematically

violated the FLSA by not counting time for calls made after the end of the plaintiffs'

shifts but lasting for less than seven minutes. *Id.* Plaintiffs here point to no overt or

accepted policy that is applicable to all non-union contractors and violated the FLSA.

In *Wlotkowski v. Mich. Bell Tel. Co.*, the plaintiffs were eleven employees hired

under the same title, "outside plan engineers," performing the same job duties. 267

F.R.D. 213, 214-16 (E.D. Mich. 2010) (Edmunds, J.). Sixty current and former outside

plan engineers joined the action as opt-in plaintiffs. *Id.* at 214. The defendant employed

outside plan engineers in "at least twelve Michigan locations"; while the named plaintiffs

had worked only in two locations, the opt-in plaintiffs had worked in all locations. *Id.* at

215. The court received thirty-five declarations from both named plaintiffs and opt-in

plaintiffs, describing consistent overtime work without overtime pay. *Id.* at 215-16. The

defendant itself admitted that it had a policy to not pay outside plan engineers overtime, asserting they were "exempt" from overtime requirements. *Id.* at 215. The plaintiffs moved for conditional certification for all outside plant engineers employed in Michigan during the prior three years. *Id.* at 216.

The defendant attempted to argue that some outside plan engineers performed different tasks at different locations. *Id.* 218-19. The court found that, even though there were different "types" of outside plan engineers, they all performed the same basic role, all held the same title, and often performed the work of different "types." *Id.* The court granted conditional certification. *Id.*

Plaintiffs here present a substantially different case. First, the proposed class in *Wlotkowski* was, like *Fischer*, tailored to fit the evidence the plaintiffs had of FLSA violations. The plaintiffs sought conditional certification for one job title in one state, which had twelve known branches. 267 F.R.D. 213, 215. While the plaintiffs had worked in two of the branches, there were sixty opt-in plaintiffs who had worked in all twelve. *Id.* There were thirty-five declarations to support the employees' experiences. *Id.* at 215-16. Here, Plaintiffs seek to represent a nationwide class with numerous job titles and work responsibilities while presenting only four affidavits, all of which represented two job types in Metro-Detroit. (ECF No. 21-1, PageID.182, ¶ 7; ECF No. 21-2, PageID.296, ¶ 6; ECF No. 28-1, PageID.593, ¶ 5; ECF No. 28-2, PageID.598, ¶ 6.) Two of the affidavits were from Plaintiffs themselves; the others described the work of validation engineers at the same location in Warren, Michigan. (ECF No. 21-1, PageID.182, ¶ 7; ECF No. 21-2, PageID.296, ¶ 6; ECF No. 28-1, PageID.593, ¶ 5; ECF No. 28-2, PageID.598, ¶ 6.)

Second, the defendant in *Wlotkowski* admitted it had a company policy classifying the job title of the proposed class as exempt from overtime requirements. 267 F.R.D. at 215. This made minor differences between outside plan engineers' job responsibilities largely irrelevant. The plaintiffs in *Wlotkowski* also presented evidence that core roles of outside plan engineers remained the same and outside plan engineers could and did easily perform other outside plan engineers' tasks. *Id.* 218-19. Here, Plaintiffs present no evidence of a companywide policy. There is no explicit rule violating FLSA overtime requirements in the contract worker handbook. While affidavits submitted by Plaintiffs make conclusory statements that some managers in Detroit-area locations understood Defendant's policy to deny overtime pay, Plaintiffs present no evidence with regard to this "policy" in other locations for any other job types around the country. (ECF No. 21-1, PageID.183, ¶ 13; ECF No. 21-2, PageID.298, ¶ 13; ECF No. 28-1, PageID.594-95, ¶ 19.) Defendant, by contrast, has submitted evidence demonstrating a policy of accepting overtime and complying with FLSA rules in other United States facilities. (ECF No. 27-4, PageID.560-62, ¶¶ 8, 12-19; ECF No. 27-5, PageID.565-66, ¶¶ 7, 10-17; ECF No. 27-7, PageID.577-78, ¶¶ 17, 21-28.)

In *Sutka v. Yazaki N. Am., Inc.*, a single plaintiff brought a claim for overtime violations against his employer, an automobile parts supplier. Case No. 17-10669, 2018 WL 1255767, at *1-2 (E.D. Mich. Mar. 12, 2018) (Borman, J.). The plaintiff worked under the title "resident engineer." *Id.* He sought conditional certification for all resident engineers employed by the defendant at any location over the prior three years. *Id.* at *1. In two declarations and one deposition, the plaintiff stated he primarily worked in several facilities around Toledo, Ohio, but also worked at locations in Michigan and

Illinois. *Id.* at *1-2, 5-6. He asserted that he observed other resident engineers and had discussed their responsibilities with them. *Id.* The defendant listed "resident engineer" as "exempt" from overtime requirements in an official job description. *Id.* at *2-3. Defendant produced uncontested evidence that there were seventy-one employees classified as resident engineers across seventeen locations in the United States, Canada, and Mexico. *Id.* at *3-4. While they were all classified as "resident engineers," some were "senior resident engineers" with management and supervisory responsibilities, some held bachelor's degrees, and some earned over $100,000 in annual income. *Id.* at *3.

The court denied conditional certification. *Id.* at *12. It reasoned that the plaintiff provided a description of his own responsibilities and made a generalized statement regarding the work of other employees hired as resident engineers. *Id.* at *9-10. Although he had worked in several locations, the plaintiff lacked "personal knowledge about the day-to-day work of Resident Engineers across the proposed class." *Id.* at *10. The court also found that employees under the title of resident engineer could qualify FLSA exemptions for employees earning more than $100,000 a year, foreign employees, "learned professionals," and "administrative" employees. *Id.* at *11.

The *Sutka* plaintiff had in some ways a stronger case than Plaintiffs do here. The plaintiff in *Sutka* was attempting to prove seventy-one employees of one job title were similarly situated across seventeen locations. 2018 WL 1255767, at *3-4. The plaintiff had worked in different locations and experienced the same conditions. *Id.* at *1-2, 5-6. Plaintiffs' affidavits in this action detail their experiences at one work location each. (ECF No. 21-1, PageID.181, ¶ 3; ECF No. 21-2, PageID.295, ¶ 3.) While Plaintiffs

include two affidavits of other workers, which the plaintiff in *Sutka* did not, those contractors worked at the same location and had the same job as Plaintiff Gallagher. (ECF No. 28-1, PageID.593, ¶ 5; ECF No. 28-2, PageID.598, ¶ 6.) Plaintiffs also request conditional certification for a far larger and more diverse class than the plaintiff in *Sutka*. Plaintiffs seek to represent thousands of contract workers under different job titles at 139 different locations. (ECF No. 27-3, PageID.556-57, ¶¶ 8, 10.) The court in *Sutka* found that the plaintiff's generalized averments as to the conditions of other employees was insufficient to support conditional certification. 2018 WL 1255767, at *10. Like here, conclusory statements as to how other contractors are treated, without detail and description and without diverse or numerous contractor affidavits, does not support the conclusion that the proposed class is "similarly situated." 29 U.S.C. § 216(b)

The plaintiff in *Sutka* could also point to a companywide policy. 2018 WL 1255767, at *1-2. The defendant in *Sutka* admitted that it classified all resident engineers as "exempt" under the FLSA. *Id.* Yet the court still found that resident engineers had a variety of backgrounds, requirements, and conditions, which could qualify some for different exemptions under the FLSA. *Id.* at *10-11. Here, Plaintiffs can rely on no such company policy. Defendant does not argue all contractors are exempt from overtime requirements, and instead presents evidence that it complies with the FLSA and pays overtime in locations around the country. (ECF No. 27-4, PageID.560-62, ¶¶ 8, 12-19; ECF No. 27-5, PageID.565-66, ¶¶ 7, 10-17; ECF No. 27-7, PageID.577-78, ¶¶ 17, 21-28.)

*Sutka* and this case are similar in one important respect: both involved a low number of plaintiffs seeking representation for a broad class of workers without even

minimal evidence of widespread similar conditions. The *Sutka* plaintiff sought and

Plaintiffs seek to represent *all* workers who fit within a diverse employment category, in

*Sutka* resident engineers and here non-union contractors, and for a *nationwide* class.

2018 WL 1255767, at *1-2. The proposed classes in *Sutka*, as here, was not narrowly

targeted in geography and work responsibilities as they were in *Fischer* and *Wlotkowski*.

Like the plaintiffs in *Sutka*, Plaintiffs present no evidence regarding the day-to-day

responsibilities of workers outside a small subsection of the class population, despite

such evidence being central to whether the workers qualify for overtime. They provide

no records, supported by personal knowledge and experience, of widespread and

nationwide overtime abuse on the part of Defendant.

## IV. CONCLUSION

Plaintiffs request conditional certification for a nationwide class of non-union

contract workers but fail to make the required "modest factual showing" that the

proposed class of workers is "similarly situated" under the FLSA. 29 U.S.C. § 216(b);

*Comer*, 454 F.3d at 547. Accordingly,

IT IS ORDERED that Plaintiffs' "Motion to Certify Class and for Judicial Notice"

(ECF No. 21) is DENIED WITHOUT PREJUDICE.

s/Robert H. Cleland                              /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 26, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, June 26, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner                                    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\19-
11836.GALLAGHER.MotiontoCertifyClassandforJudicialNotice.RMK.RHC.3.docx